**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wesley A. PLUMMER, Defendant–
Appellant.**

**No. 90–10013.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1991.

Decided Aug. 1, 1991.

---

Michael B. Scott, Phoenix, Ariz., for defendant-appellant.

Roslyn Moore-Silver, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before HUG, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Wesley Plummer appeals his conviction following a conditional plea agreement to charges stemming from the submission of falsified contractor's bonds and surety forms to various federal agencies. He argues that the government had granted him transactional immunity, or, at the very least, use and derivative use immunity, for statements made in a pre-indictment interview. He says the government breached the immunity agreement, requiring dismissal of the indictment. The district court held that the government granted only direct use immunity, and not derivative use or transactional immunity, and that the agreement was not breached. The district court had jurisdiction to hear the federal charges, 18 U.S.C. § 3231, and this court has jurisdiction of Mr. Plummer's timely appeal, 28 U.S.C. § 1291. We reverse and

hold that the agreement granted Mr. Plummer use and derivative use immunity. We remand for a determination of whether the agreement was breached.

## BACKGROUND

In 1985, near the conclusion of an investigation of Mr. Plummer and others, a grand jury in Arizona subpoenaed Mr. Plummer, a candidate for public office in Pennsylvania. The subpoena required Mr. Plummer to provide handwriting samples and testimony, although the government attorney directing the investigation stated that Mr. Plummer's testimony was not needed to complete the investigation and that he did not contemplate questioning Mr. Plummer in front of the grand jury. Mr. Plummer requested an interview in Pennsylvania in lieu of an appearance in Arizona to avoid adverse publicity during his campaign. Mr. Plummer's counsel told government agents that his testimony should establish his innocence. The government agreed to the interview in a letter that is the centerpiece of this appeal. The government informed Mr. Plummer's counsel that the evidence already accumulated against him was so substantial that it would only consider a plea to a felony unless he could clear himself in the interview. The interview took place in October, 1985.

Mr. Plummer was indicted in November, 1988 on 24 counts of submitting false and fraudulent bond and surety forms to various federal agencies. The district court held that the pre-interview letter agreement granted Mr. Plummer only direct use immunity and denied his motion to dismiss the indictment for violation of the grant of immunity. Mr. Plummer eventually entered a plea agreement and was sentenced to probation. This appeal followed.

## DISCUSSION

### I. THIS INFORMAL IMMUNITY AGREEMENT

Issues regarding immunity usually arise when a defendant asserts the Fifth Amendment privilege against self-incrimination and refuses to testify before a court or grand jury. The Supreme Court has established that the government may compel testimony in these circumstances, over the defendant's objection, if it grants use and derivative use immunity to the defendant under 18 U.S.C. § 6002. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). An attorney must have the approval of an Assistant, or Deputy Assistant, Attorney General to grant the immunity and must seek the order compelling testimony from a district court. 18 U.S.C. § 6003. The immunity granted in such circumstances is commonly called "statutory immunity."

In addition to statutory immunity, the government can also grant varying degrees of immunity in informal agreements with individuals. "Informal immunity" is granted in a variety of circumstances short of the defendant having claimed the Fifth Amendment privilege. *See, e.g., United States v. Irvine,* 756 F.2d 708, 709 (9th Cir.1985) (defendant offered to supply information in exchange for money, protection, and immunity); *United States v. Carrillo,* 709 F.2d 35, 35 (9th Cir.1983) (government offered immunity from prosecution if arrestee would cooperate in investigation). The government is not bound by the procedures and requirements in the immunity statute when granting this form of immunity, and ordinary contract principles apply when interpreting informal immunity agreements. *Irvine,* 756 F.2d at 710. *But see Carrillo,* 709 F.2d at 36 n. 1 ("Cases may arise in which the law of contracts will not provide a sufficient analogy" for resolving all cooperation agreements' disputes.).

The letter agreement between Mr. Plummer and the government is an informal immunity agreement. Because Mr. Plummer never asserted his Fifth Amendment privilege, the government was never placed in a position in which it was required to grant use and derivative use immunity under 18 U.S.C. § 6002 before it could compel testimony.[1] The district

---

1. The appellant makes much of the fact that the grand jury subpoena "compelled" his appear-

court's interpretation of the agreement between Mr. Plummer and the government, and whether that agreement was violated, determined whether the motion to dismiss the indictment would be granted or denied. Therefore, the standard of review of the district court's denial of the motion is the same as in civil contract cases.[2] *Cf. Irvine,* 756 F.2d at 710. Factual determinations, including what the parties intended by an ambiguous contract, are accepted unless clearly erroneous. *L.K. Comstock & Co. v. United Eng'rs & Constructors, Inc.,* 880 F.2d 219, 221 (9th Cir.1989); *Carrillo,* 709 F.2d at 37. Whether the facts establish a violation of the contract is a question of law reviewed de novo. *L.K. Comstock & Co.,* 880 F.2d at 221. A contract is to be given a reasonable interpretation in light of the contract as a whole and the surrounding circumstances. *Irvine,* 756 F.2d at 710–11.

▮▮▮▮ The appellant argues that the government granted him transactional immunity in the letter agreement in return for his interview. Transactional immunity is full immunity from prosecution for any offense to which the testimony relates. *Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661. There is no evidence to support a claim for full immunity from prosecution in the government's October 18 letter or in the surrounding circumstances. The letter makes the following two statements about protection for Mr. Plummer:

> Finally, it is agreed that if Wes Plummer is candid and truthful with Mr. Deak during that interview, statements made will not be used in any subsequent prosecution of him (Plummer).

> (handwritten and signed at the bottom of the letter:) If the Government elects to

prosecute Mr. Plummer anything said during the interview on 10/29/85 will not be used against him or to incriminate him.

By these express terms, the government contemplated possible prosecution against Mr. Plummer for the offenses discussed in the interview. Obviously, transactional immunity was not granted.

▮▮▮▮ The appellant argues, in the alternative, that the government granted him both use *and* derivative use immunity in the letter. If the government granted Mr. Plummer use and derivative use immunity, it would be required to have derived all the information on which the subsequent prosecution was based from a source wholly independent of the statements made in the interview. *See Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661; *see also* 18 U.S.C. § 6002. In contrast, if the government granted only direct use immunity, it would not be able to use the interview statements directly against Mr. Plummer in a subsequent prosecution, but would be allowed to use information derived from the statements.

The district court found that the government's main purpose in issuing a grand jury subpoena to Mr. Plummer was to get handwriting samples and to locate other witnesses. Mr. Plummer's testimony was not crucial to the investigation at that time. The word "immunity" was never used in the negotiations with Mr. Plummer regarding his interview. Given these circumstances, the district court found that the government intended only to protect Mr. Plummer's statements from direct use as evidence, not from any derivative use whatsoever.

The district court did not make an express finding as to Mr. Plummer's intent

---

ance and testimony. However, for purposes of statutory use immunity, the appellant's testimony is not compelled unless he first asserts his Fifth Amendment privilege and the government then chooses to have the court require his testimony anyway. That did not happen here. Indeed, Mr. Plummer testified that he would not have asserted his Fifth Amendment privilege even if he had appeared before the grand jury.

**2.** Unlike this case, motions to dismiss that invoke the district court's supervisory power, such

as a remedy for the government's violation of a cooperation agreement with the defendant, are reviewed for abuse of discretion. *United States v. Simpson,* 813 F.2d 1462, 1465 n. 2 (9th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987); *Carrillo,* 709 F.2d at 36, 37. Also unlike this case, motions to dismiss that are founded on constitutional grounds, such as a violation of due process, are reviewed de novo. *Simpson,* 813 F.2d at 1465 n. 2.

and understanding of the agreement, except to find that the appellant was not misled by the government as he was represented by counsel both before and during the interview. When asked on cross-examination whether he saw anything in the letter that implied that the government would not use information derived from his statements, Mr. Plummer replied, "Well that was my interpretation, and that was explained to me by my attorney." *United States v. Plummer*, No. CR–88–332–PHX–RCB, Transcript of Motion to Dismiss at 80 (D.Ariz. March 6, 1989).

■ Whether contract language is ambiguous is a question of law that this court reviews de novo. *L.K. Comstock*, 880 F.2d at 221. If both parties' interpretation of a contract lies within the zone of reasonableness after all the evidence is heard, the ambiguity will be resolved against the one who drafted the language. *Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998 (9th Cir.1983). However, "[a] rule for construing contracts against the author is not an alternative to construing the contract as the parties intended. It is to be applied after the court has inquired into the intent of the parties, and then only if its meaning remains uncertain." *Board of Trade v. Swiss Credit Bank*, 597 F.2d 146, 149 (9th Cir.1979).

In this case, the district court concluded that the language in the letter was not sufficiently ambiguous that Mr. Plummer or his counsel could be led to believe that anything, but the direct use of his statements as evidence was prohibited. As quoted above, the language of the letter says simply that statements made would not be "used in any subsequent prosecution" of Mr. Plummer and would not be "used against him or to incriminate him." The second phrase is part of a handwritten addendum to the letter requested by Mr. Plummer's attorneys at the beginning of the interview. The appellant argues that

the promise not to use "anything said during the interview ... to incriminate him" was meant to clarify and strengthen the scope of immunity offered in the letter, and extends to using the information from the interview to uncover other incriminating evidence (derivative use).[3] According to the government, neither the original nor the added language conferred derivative use immunity.

We disagree with the district court's determination that the contract is unambiguous. The common understanding of "use immunity" in the criminal justice world is that it encompasses derivative use immunity. Although, the Supreme Court's thorough discussion of use immunity in *Kastigar* carefully distinguishes between use immunity and the broader derivative use immunity, 406 U.S. at 442, 450, 453, 92 S.Ct. at 1655, 1659, 1661, the two now almost always arise together in federal courts; statutory immunity, requiring both use and derivative use immunity, 18 U.S.C. § 6002, is much more common than informal immunity. Consequently, it is not uncommon for courts to define use immunity as including derivative use immunity even when informal, rather than statutory, immunity is involved. *See, e.g., United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir.1990) ("The specific terms of these agreements contemplated use, rather than transactional, immunity and thus prohibited the government's direct or derivative use of the immunized testimony."); *United States v. Harvey*, 869 F.2d 1439, 1444 (11th Cir.1989) ("Use immunity prohibits the use of compelled testimony, or any evidence derived directly or indirectly from that testimony, against the witness in a criminal prosecution."). Even Special Agent Gary F. Deak, who participated in the interview of Mr. Plummer, testified that in five years experience he had "never been involved with an immunity that allowed for the use of the fruits of the leads. So I wouldn't even have any occasion to consider that."

---

**3.** The Assistant U.S. Attorney and the Special Agent responsible for the letter testified at the hearing on the motion to dismiss that the language was added because of the concern of Mr. Plummer's attorneys that the letter seemed to

say that prosecution was inevitable. They wanted to ensure that the government would consider the information provided in the interview before prosecuting Mr. Plummer. *Plummer*, Transcript of Motion to Dismiss at 12, 56.

*Plummer,* Transcript of Motion to Dismiss at 39.

The language of the informal agreements which the courts in *Pelletier* and *Harvey* interpreted as granting use (and derivative use) immunity was no more express than the language at issue in this case, except that the word "immunity" was used in *Pelletier.* In *Pelletier,* the unwritten agreement was presented to the defendant as follows: "[Y]ou have immunity to the extent your testimony cannot be used against you in any criminal proceeding...." 898 F.2d at 302. In *Harvey,* the court found that an oral agreement conferred use (including derivative use) immunity, although the government protested that no mention of immunity had been made. 869 F.2d at 1441–44. *See also United States v. Brown,* 801 F.2d 352, 353, 355 (8th Cir.1986) (The following language prevented "direct or indirect" use: "[T]he statements made in reliance upon this agreement will not be used against [Glenn] Duane Brown except in a prosecution for perjury or false statement.").

We have found only one case that meaningfully distinguishes between use and derivative use in an informal immunity agreement between the government and a defendant. In *United States v. Lyons,* 670 F.2d 77, 80 (7th Cir.), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), the prosecution apparently had told the appellant "that nothing the appellant said could be attributed to him or used against him, but that the government would be free to follow any leads provided by appellant against him...." The Seventh Circuit affirmed the district court's holding, which was, in effect, that this language conferred use, but not derivative use, immunity. *Id.* at 80, 80 n. 4. Our case is different from *Lyons* in that the government did not explicitly reserve any right to make derivative use of Mr. Plummer's statements.

We hold that use immunity presumptively includes derivative use immunity, unless the government can demonstrate in a given case that, at the time the agreement was made, it expressly clarified that only direct use immunity was offered. In this case, during the hearing on the appellant's motion to dismiss the indictment, Agent Deak testified on direct examination that he told Mr. Plummer at the interview that "the letter simply means that any statements that he gives at the particular interview, myself or Agent Slusser could not testify against him at any subsequent hearing...." *Plummer,* Transcript of Motion to Dismiss at 16. This sounds like Agent Deak adequately informed Mr. Plummer that only direct use immunity was offered. However, on cross-examination, Mr. Deak admitted that what he told Mr. Plummer is

basically the same thing that I say on all occasions when this type of situation exists where there's some type of immunity. I've never been involved with an immunity that allowed for the use of the fruits of the leads. So I wouldn't even have any occasion to consider that.... I told him basically that his statements could not be used, *and* that I could not testify nor could Donna Slusser testify as to what he said....

*Id.* at 39–40 (emphasis added). Mr. Plummer corroborated Mr. Deak's testimony that he was told that his statements could not be used *and* that no one could testify to what he said. *Id.* at 79. The word "use", without more, is ambiguous for the reasons discussed above. Mr. Plummer testified that his attorneys explained to him that the government would not be able to use information derived from his statements made at the interview, and, apparently, Agent Deak did not clarify that only direct use immunity was offered. The appellant was not unreasonable in his conclusion that the language barring use of his statements included derivative use. We hold that the government conferred both use and derivative use immunity on Mr. Plummer.

Because we reverse the district court and hold that use and derivative use immunity was granted Mr. Plummer, the case must be remanded to the district court to determine whether the government breached the agreement by making derivative use of Mr.

Plummer's statements. *See United States v. Zielezinski*, 740 F.2d 727, 754 (9th Cir. 1984).

## II. ACCESS TO GRAND JURY TRANSCRIPTS

██ In February, 1989, the district court heard and denied Mr. Plummer's motion for release of the grand jury transcripts leading to his indictment. Mr. Plummer wanted full access to the transcripts to determine whether the government had breached its immunity agreement made during the October, 1985 interview. The district court later conducted an in camera review of the grand jury transcripts and decided to provide Mr. Plummer with all the relevant parts. At the hearing on the motion to dismiss the indictment, the appellant renewed his request for full access to the transcripts. The prosecutor made it clear that she had already supplied Mr. Plummer with all parts of the transcripts that mentioned him. The court took copies of the parts that the prosecutor had already supplied to Mr. Plummer and promised to compare them with the full transcripts and provide any other parts that might be relevant. The appellant appeals the district court's decision not to allow him access to the full transcripts.

██ The decision to release or not release grand jury transcripts is reviewed for abuse of discretion. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). The standards the district court should follow when lifting the secrecy of grand jury proceedings are (1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and, (3) that only the relevant parts of the transcripts should be disclosed. *Id.* at 222, 99 S.Ct. at 1675. The importance of secrecy in grand jury proceedings extends to the effect on future grand juries, not just the particular grand jury involved, which may have completed its proceedings long before a defendant's request for transcripts. *Id.*[4] When the defense shows a particularized need for grand jury transcripts that outweighs the need for secrecy, the trial judge's function is reduced to eliminating only extraneous material or issuing protective orders in unusual situations. *Dennis v. United States*, 384 U.S. 855, 875, 86 S.Ct. 1840, 1852, 16 L.Ed.2d 973 (1966).

██ In this case, the district court denied defense counsel full access to all the grand jury transcripts because they dealt with several other potential defendants, as well as Mr. Plummer. The prosecutor and the court provided the defense with all parts of the transcripts that mentioned Mr. Plummer or that seemed relevant to his indictment. In essence, the court granted Mr. Plummer's request, but eliminated extraneous matter unrelated to him as required by *Dennis*. Mr. Plummer's counsel argues that he should be allowed to decide what is and is not related to his case. However, protection of grand jury secrecy requires the court to decide that question. This is not a case in which the district court looked through transcripts related to the defendant and decided what was necessary for his defense. Under *Dennis*, that prerogative belongs to defense counsel once a particularized need that outweighs the need for secrecy is shown. *Id.* Here, the district court provided defendant's counsel with everything that mentioned his name or was about him. The district court properly exercised its discretion in balancing Mr. Plummer's need for the grand jury testimony related to him and the need to preserve the secrecy of grand jury proceedings generally.

## CONCLUSION

We REVERSE the district court's holding that the government's letter provided only direct use, and not derivative use, immunity to Mr. Plummer and REMAND

---

**4.** A list of the important interests protected by the secrecy of the grand jury proceedings is given by the Supreme Court in *Douglas:* encouraging witnesses to come forth voluntarily and to testify fully and frankly, reducing the possibility that those under investigation will flee or attempt to influence grand jurors' votes, and protecting accused, but exonerated individuals from public ridicule. 441 U.S. at 219, 99 S.Ct. at 1673.

for a hearing to determine whether the government made derivative use of Mr. Plummer's October, 1985 statements. We AFFIRM the district court's denial of appellant's motion for full access to the grand jury transcripts.