30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Laura Jean RICHARDS, Petitioner-Appellee,
v.
UNITED STATES of America, Respondent-Appellant.
 No. 93-1631.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1994.
 
 Before MARTIN and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Petitioner-appellee, Laura Jean Richards, filed a Motion To Set Aside Plea, pursuant to 28 U.S.C. Sec. 2255, in the United States District Court for the Eastern District of Michigan, Southern Division. Ms. Richards alleged that she was provided with ineffective assistance of counsel which prejudiced the exercise of her rights with regard to a series of plea agreements entered into with the United States Attorney's Office. An evidentiary hearing was held, after which the district court granted petitioner's motion, vacating her plea and dismissing the indictment with prejudice. The United States, respondent-appellant, timely brings the present appeal alleging the district court erred by granting the petition.
 
 I.
 
 2
 On November 15, 1990, Ms. Richards arrived at the Detroit Metropolitan Airport, returning home from Thailand. Upon passing through customs, United States customs agents discovered 1,212 grams (approximately 2.8 pounds) of heroin hidden in the false bottom of her suitcase. Accordingly, Richards was detained by agents for questioning.
 
 
 3
 Richards initially invoked her right to remain silent. After maintaining her silence for almost eight hours, she ultimately agreed to cooperate. She implicated three men in the scheme to import heroin, Christopher Nwampka, Victor Nwampka, and Ugo Ogobonna. She failed, however, to include the identity of a fourth man involved in the plot, Charles Okezie, who was also her boyfriend. An informal handwritten plea agreement was entered into between Richards and customs agents, which was approved by the Assistant United States Attorney ("AUSA"). The agreement stated that Richards would attempt to deliver the heroin to Christopher Nwampka and that, if successful, she would be charged only with violating 21 U.S.C. Sec. 844, possession of a controlled substance (a misdemeanor punishable by one year imprisonment). The agreement also provided that she would testify truthfully in a court of law about Christopher and Victor Nwampka's conspiracy to import heroin. The agreement was signed by Ms. Richards and the customs agent.
 
 
 4
 In an effort to carry out the agreement, Ms. Richards telephoned Christopher Nwampka to orchestrate the delivery. With customs agents listening in, she spoke with Nwampka and attempted to make the arrangements for delivery of the heroin to his apartment. Richards, who was then fitted with a body microphone, endeavored to complete the delivery. The original plan in the conspiracy, however, called for the delivery to be made to Charles Okezie, not Nwampka. This unscheduled change in plans made Nwampka suspicious and he decided not to wait for Richards. Okezie, however, was at Nwampka's apartment when Richards telephoned and knew about the proposed delivery. After Nwampka left, Okezie waited for Richards in the parking lot of Nwampka's apartment. When she arrived, he met her and took the suitcase. Police subsequently arrested Okezie.
 
 
 5
 In spite of the fact that an informal written plea agreement had already been negotiated and entered into, the AUSA then negotiated a formal written plea agreement with Richards, which was to be executed pursuant to Rule 11. Richards was represented by her attorney, John Belanger. In this second agreement, Richards agreed to cooperate fully with the United States Attorney, to be completely debriefed, and to testify truthfully before a grand jury and in court. In return, she would again be allowed to plead guilty to the same misdemeanor offense, one count of Possession of a Controlled Substance. In addition, although not part of the written agreement, she was verbally informed that if she fully cooperated, she might not even be indicted. The agreement further stated that if she violated the terms of the agreement, all government promises were null and void.
 
 
 6
 On December 4, 1990, Richards appeared before the Grand Jury. It is undisputed that her testimony was truthful in all respects. It is equally clear that her testimony was instrumental in obtaining indictments against Charles Okezie, Ugo Ogobonna, Christopher Nwampka and Victor Nwampka. On May 21, 1991, in preparation for the trial of Christopher Nwampka, Richards was debriefed by the AUSA. At this time she stated that her boyfriend, Charles Okezie, had not been involved in the conspiracy and was, in fact, opposed to Richards traveling to Thailand. The AUSA informed Richards that he thought she was being untruthful and that if she failed to tell the truth, the plea agreement would be nullified, leaving Richards to face a felony conviction. Richards discussed the matter with her counsel, who convinced her to be truthful. She returned to the meeting and stated that her grand jury testimony was the true version of the events.
 
 
 7
 On June 10, 1991, a second debriefing was held. Again, it is undisputed that Richards was truthful in every way at this debriefing. A third debriefing session was held on June 24, 1991. On this occasion, however, Richards's counsel did not attend. Apparently, after the June 10 briefing, Belanger had informed both the AUSA and Richards that there was no need for him to be present at future debriefings.
 
 
 8
 At the June 24th session, Richards again changed her story as it related to Okezie's role in the conspiracy. She stated that her grand jury testimony had been false. The AUSA informed Richards that he thought she was again lying and that she should go home, think about it and return the following day. The government alleges that at that point, they had decided to revoke the plea agreement based upon her failure to testify truthfully. It was the government's position that her conflicting statements had effectively disabled her from testifying at trial.[1]
 
 
 9
 Occurring simultaneously, however, the government had been able to finalize a plea agreement with Christopher Nwampka. This agreement was signed on the morning of June 25, 1991. In obtaining this plea agreement, the government had apprised Nwampka that Richards had already agreed to testify against him if his case went to trial. Needless to say, this greatly increased the government's negotiating power over Nwampka.
 
 
 10
 Notwithstanding this turn of events, on June 25, 1991, Richards, accompanied by her parents, arrived at the Federal Building with the intention of fully cooperating. They were met by her counsel, Belanger. The AUSA first met with Belanger and informed him that the government now considered the plea agreement to be breached. Belanger accepted the decision and informed Richards and her parents. Belanger also stated to Richards and her parents that the breach was the result of lies in her testimony to the Grand Jury. This, despite the fact that Richards did not lie, nor was she accused of lying, to the Grand Jury. Belanger never questioned the authority of the government to decide unilaterally that the agreement had been breached. He filed no motions in an attempt to enforce the first plea agreement or the Rule 11 plea agreement.
 
 
 11
 On July 3, 1991, Richards was formally indicted by the United States Grand Jury for the importation of heroin. On September 4, 1991, she pleaded guilty pursuant to a second Rule 11 plea agreement. Richards entered into this second agreement upon Belanger's advice that it was her best possible option. She was sentenced on October 31, 1991, to ten years imprisonment.
 
 
 12
 On March 16, 1992, Richards filed a 28 U.S.C. Sec. 2255 motion requesting the district court set aside her guilty plea because she had been provided with ineffective assistance of counsel. After holding an evidentiary hearing, the district court granted petitioner Richards's motion. The district court also made the following findings. Richards fulfilled her obligations under the handwritten plea agreement, yet her counsel made no effort to enforce this agreement. Further, Richards significantly performed on the first formal Rule 11 plea agreement. Her cooperation and the information provided led to garnering physical evidence against Nwampka and Okezie. In addition, her grand jury testimony resulted in the indictments of four participants. The court also noted the government's awareness that Richards was still seeing Okezie and that her credibility as a witness was problematic. Due to this involvement, Richards should not have been allowed to meet with the AUSA without counsel present. This is especially true in light of the problems which had already occurred in this case. The district court recognized that an attorney's responsibility to assist his/her client includes all aspects and phases of a case.
 
 
 13
 The district court likewise noted that the government did not unilaterally decide the plea agreement had been breached until her testimony was no longer required. The district court found that it was highly likely that Nwampka entered into a plea agreement because he was aware that Richards had agreed to testify against him at his trial. The district court also found that Richard's testimony was no longer needed to convict Okezie, in light of Nwampka's agreement to cooperate and testify. Most importantly, the district court noted that Richards's counsel too willingly accepted the government's position. He made no effort to raise the issue of enforcing either of the prior plea agreements in court and failed to adequately advise her and her parents of their options.
 
 
 14
 The district court thus held that her attorney's performance was deficient and that her counsel did not perform as a lawyer of ordinary skill and competence. The court found that he failed to adequately research both the facts and the law. Furthermore, the district court ruled that it was highly likely that Richards had not breached the plea agreements, but rather, had substantially performed them and had a motion been brought, either of the first two agreements would have been enforced.
 
 
 15
 Finally, the district judge noted that it was not until the review of petitioner's Sec. 2255 motion, that all of the relevant facts were available to decide this issue.[2] Although the government would place great weight on the commentary made by the court during Okezie's trial and subsequent appeal, regarding Richards's alleged breach of her plea agreement, this dictum is not binding on this court in the case at bar. Moreover, it would be patently unfair to hold such observations, made by any court as dicta in another case, against a criminal defendant who was not a party to the case. Indeed, using comments made in the Okezie trial against Richards is in direct violation of her Sixth amendment right to confront adversarial witnesses.
 
 II.
 
 16
 The government argues that the district court erred in finding that Richards was provided with ineffective assistance of counsel. The government asserts that Belanger, petitioner's counsel, was not ineffective. The government further argues that Richards was not prejudiced because she would not have been able to enforce the prior agreements.
 
 
 17
 To prevail under Sec. 2255, a defendant must show a fundamental defect in the proceedings which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir.) (per curiam), cert. denied, 113 S.Ct. 2424 (1993). To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Sims v. Livesay, 970 F.2d 1575, 1579-81 (6th Cir.1992). The performance and prejudice components of the Strickland test are mixed questions of law and fact, and thus subject to de novo review. Strickland, 466 U.S. at 698; Sims, 970 F.2d at 1579. Counsel's performance was ineffective only if, in light of all the circumstances, the identified acts or omissions were outside the wide range of what is considered professionally competent assistance. Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir.1992) citing Strickland, at 689 (counsel's failure to make a reasonable investigation was deemed to be ineffective assistance of counsel).
 
 
 18
 To satisfy the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 
 
 19
 In the case sub judice, Richards had fulfilled her obligations under the handwritten plea agreement. This included wiring herself with a microphone and making the delivery. Although the delivery was supposed to have been to Nwampka instead of Okezie, it is a distinction without a difference. Yet, Richard's counsel made no effort to have this agreement enforced. Furthermore, when viewing her performance on the first written plea agreement in total, we find she had substantially complied with its terms. It was with her help, that the government was able to obtain indictments and subsequent convictions of the other members of the drug importation ring. Yet, again, Belanger never made the effort to enforce this agreement or have the court do so. It was also inexcusable for Belanger to not be present when his client met with the AUSA. This is especially true in light of Richard's relationship with Okezie and the problems she previously had in implicating him.
 
 
 20
 Most importantly, however, was Belanger's failure to research the facts and law adequately. Richards was encouraged to plead guilty and accept ten years imprisonment while her attorney made no effort to enforce the two prior plea agreements. Neither Richards nor her family were even informed that there was an option of challenging the government's unilateral decision that the plea agreement had been voided. Belanger did not even know that it was the government who bore the burden of proving, in a court of law, that Richards had not substantially complied with the plea agreement. Accordingly, it is clear that Richards's counsel's highly deficient performance deprived her of the effective assistance of counsel.
 
 III.
 
 21
 The government avers that, even if Richards's counsel's performance was deficient, she should not prevail on her ineffective assistance of counsel claim because she was not thereby prejudiced. This argument is based on the presumption that Richards could not have enforced the plea bargains because she had breached the terms of the agreements. The government asserts that the district court erred by determining that Richards had met the terms of the plea bargain by substantially performing her obligations under the prior plea agreements. The government argues that the district court applied the incorrect legal standard and drew conclusions which were unsupported by the record. Accordingly, the government concludes that there could not have been any prejudice suffered, and so she has failed to meet the second prong of the test for proving an ineffective assistance of counsel claim under Strickland.
 
 
 22
 This court has recently addressed a similar issue involving deals for immunity. The concepts should be the same as in a plea bargain:
 
 
 23
 To secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony. United States v. Pelletier, 898 F.2d 297, 301 (2nd Cir.1990). An agreement not to prosecute is contractual in nature, and subject to contract law standards. United States v. Brown, 801 F.2d 352, 354 (8th Cir.1986). The conditions which will constitute a breach of the immunity agreement are governed by the agreement itself. United States v. Packwood, 848 F.2d 1009, 1012 (9th Cir.1988). If a firm agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal. Brown, 801 F.2d at 355. ... In any event the most important consideration is the incriminating nature of the proffered statements, not the amount of information provided to the government. United States v. Johnson, 861 F.2d 510, 513 n. 3 (8th Cir.1988).
 
 
 24
 United States v. Fitch, 964 F.2d 571, 574 (6th Cir.1992).
 
 
 25
 Furthermore, the government bears the burden of proving that the alleged breach was both material and substantial. Id., citing United States v. Castelbuono, 643 F.Supp. 965 (E.D.N.Y.1986). This court will accept the factual determinations, including what a party intended by an ambiguous contract, unless clearly erroneous. United States v. Plummer, 941 F.2d 799, 803 (6th Cir.1991) (citations omitted). Whether the facts establish a violation of the contract, however, will be reviewed de novo. Id. A contract will be reviewed as a whole and given a reasonable interpretation in light of the surrounding circumstances. Id.
 
 
 26
 In the case at bar, the district court first determined that it would analyze the breach of plea agreement question under contract principles. The district judge then determined that Richards had substantially performed under the handwritten plea and the first formal plea agreements. The court correctly noted that it was Richards's testimony in front of the grand jury which resulted in indictments against Okezie, the Nwampkas, and Ogobonna. It was her threat of testifying at the trial of Nwampka, which she had agreed to do, which was a substantial factor in Christopher Nwampka's decision to plead guilty.
 
 
 27
 The district court properly analyzed the situation, applied the correct legal standards and determined that, under the facts of this case, Richards's divergences from the plea agreements were unsubstantial and immaterial. It cannot be said that the district court's factual findings were clearly erroneous. Richards had a right to ask the court to require the government to abide by the agreements which they had entered into. In light of this conclusion, clearly Richards has demonstrated to a reasonable probability that she was prejudiced by her counsel's failure to have the district court enforce the prior plea agreements thereby meeting the second prong of the test for proving ineffective assistance of counsel as enunciated in Strickland.
 
 IV.
 
 28
 The Order of the District Court is hereby AFFIRMED.
 
 
 29
 BATCHELDER, Dissenting.
 
 
 30
 I respectfully dissent. This is an appeal from the district court's granting of Richards's Sec. 2255 motion; thus the issue is whether the ineffectiveness of Richards's counsel was so egregious and the resulting prejudice to Richards so great that her ultimate conviction and sentence are unreliable. I would hold that they are not.
 
 
 31
 The facts that were before the district court are virtually uncontested. It is undisputed that Richards brought into the United States more than 1200 grams of heroin. It is undisputed that Richards was caught with the heroin. It is undisputed that Richards agreed to cooperate with the authorities and that she entered into a handwritten agreement to do so. It is undisputed that Richards lied to the authorities about who was involved in the conspiracy to import the heroin, and that Richards told the authorities about Christopher Nwampke but did not tell them about Charles Okezie. It is undisputed that the original handwritten agreement was based on the information which Richards gave the authorities, that the agreement explicitly required that Richards deliver the heroin to Nwampke, and that the agreement explicitly stated that unless the heroin was delivered to Nwampke, Richards would be charged with the felony offense of importation of a controlled substance. It is undisputed that Richards did not deliver the heroin to Nwampke.
 
 
 32
 There is no dispute whatsoever that Richards's lies to the authorities resulted in her agreeing to do something which she ultimately could not do; there is no dispute that what she failed to do was what the agreement explicitly required her to do, and what the reduced charge was explicitly and expressly conditioned upon. The district court, however, held that Richards fully performed her obligations under that agreement, and the majority here holds that Richards's delivering the heroin to Okezie rather than Nwampke is "a distinction without a difference." Apparently the district court and the majority would hold that drug dealers are fungible, and if the authorities catch one, they ought not be heard to complain that they did not catch the one they bargained to catch.
 
 
 33
 That first handwritten agreement also required that Richards would "testify truthfully in a court of law regarding Christopher and Victor Nwampke's conspiracy to import heroin into the United States." It is undisputed that Richards did not tell the authorities anything about Okezie and the authorities did not know about Okezie at the time that agreement was drawn up and executed. The district court held that this agreement did not obligate Richards to testify about Okezie, although it is undisputed that Okezie was part of the conspiracy. The majority does not address this holding, although it was important to the district court's reasoning.
 
 
 34
 Having been caught in her own lies, Richards complains that she should have been excused for her first failure, and the district court agreed. Hence, according to the district court, there was "no good reason" for the second agreement. The majority apparently agrees, holding that Richards's counsel should have moved to have the first agreement enforced. Further, the majority holds, the district court's next conclusion, that Richards "significantly performed" on the second agreement, was correct. Specifically, the majority holds that Richards "substantially complied" with the terms of the second agreement because through her grand jury testimony, the government was able to obtain several indictments, and, in spite of her deliberate equivocating and recanting which rendered her wholly incredible as a potential witness, the government was able to obtain the conviction of Okezie and a guilty plea from Nwampke.
 
 
 35
 It is, however, undisputed that the second plea agreement required that Richards cooperate fully with the government. It is undisputed that while she did testify truthfully before the grand jury, she subsequently recanted that testimony, recanted the recantation, and then, as a grand finale, recanted the second recantation with a new story. It is undisputed that the government did, indeed, obtain the conviction of Okezie. However, it is also undisputed that the government was not able to use Richards as a witness in that trial or in trials of any other members of the conspiracy, and that, at least partly as a result of Richards's uselessness as a witness, the government had to dismiss the indictment against one of those conspirators. It is conjectured by the district court, and stated as fact by the majority, that it was the threat of using Richards as a witness against him which caused Christopher Nwampke to enter a plea of guilty; however, the district court acknowledged that this was never explored at the evidentiary hearing.
 
 
 36
 The district court held and the majority here affirms that the performance of Richards's counsel was sufficiently egregious and the resulting prejudice to Richards was sufficiently great to constitute a violation of the Sixth Amendment, reasoning that any breach of the plea agreements was not material or substantial, and therefore, had the motions to enforce the plea agreements been filed, they would have been granted. The test for substantiality and materiality which the majority apparently adopts is whether a post hoc analysis supports the conclusion that the government got pretty much what it wanted in spite of the Richards's failure to perform all of what was required of her under the agreements. With the benefit of hindsight, the district court held, and the majority now holds, that Richards's counsel should have recognized that these breaches were rendered insubstantial and immaterial by the outcome of the Okezie trial and the Christopher Nwampke plea negotiations, and should have moved to enforce both of the plea agreements.
 
 
 37
 I have found no authority, and none is cited by either the district court or the majority, to support this test. Certainly the government would have borne the burden of proving that the breaches were substantial and material, had the motions been filed. But here, the facts are simply not in dispute. When the chaff is removed, what is left is this: The substance of the first agreement was Richards's delivery of the heroin to Christopher Nwampke; the substance of the second agreement was truthful testimony in any court proceeding and complete cooperation with the government. Richards did not deliver the heroin to Christopher Nwampke; Richards did not cooperate with the government. These breaches were not only substantial and material; what Richards failed to do was the essence, the sine qua non, of what the agreements required.
 
 
 38
 Accordingly, I would hold that if the motions to enforce those agreements had been filed by Richards's counsel, they could not lawfully have been granted. Therefore, the prejudice to Richards from her counsel's failure to file the motions is not sufficient to render the result in this case unreliable.
 
 
 39
 The fact that Richards's counsel was not present during the final session with the Assistant United States Attorney in which Richards once again changed her story is troubling. As the Seventh Circuit pointed out in United States v. Ataya, 864 F.2d 1324, 1327, n. 5 (7th Cir.1988), a defendant who has entered into a plea agreement requiring cooperation with the government may, by virtue of her conduct during interviews with the government, find herself accused of breach of the agreement and thus the parties would be in an adversarial posture. However, the court declined to rule formally that the procedure was constitutionally impermissible since defense counsel had consented to the questioning and there was no suggestion that the government had acted improperly in questioning the defendant.
 
 
 40
 Here, Richards's own testimony from the evidentiary hearing makes it absolutely clear that she knew what the consequences of again recanting her grand jury testimony would be, that she knew that she was lying, and that she and her counsel had agreed to his not attending that debriefing and she knew she could have had her counsel present, had she requested that. Richards's real complaint is not that her counsel was not present to advise her. Her real complaint is that her counsel should have been there to protect her from herself. The district court agreed.
 
 
 41
 Further, the district court stated clearly for the record that he believed that Richards was "a fragile witness from the moment she was arrested, and everyone should have understood it. And the likelihood of her being worthy as a witness for the Government was always questionable, always questionable." The district court did not explain, however, what the government's alternatives were, had it recognized that Richards was "fragile." Perhaps the government should simply have prosecuted her, with no strings attached, for a misdemeanor offense of bringing 1212 grams of heroin into the country as part of a Nigerian heroin conspiracy.
 
 
 42
 It is clear from the transcripts of the sentencing hearing and the hearing on Richards's Sec. 2255 motion that the district court was very reluctant to sentence this young woman to the statutory minimum of ten years in prison for this offense. Yet the district court itself noted at sentencing that Richards was involved in this conspiracy "up to her eyeballs," and the record evidences no similar concern relative to the other members of the conspiracy. Sentencing a young woman in the circumstances of Laura Jean Richards to ten years in prison is perturbing. More perturbing is finding a way not to sentence a young woman in those circumstances to the term the statute requires.
 
 
 43
 I would reverse the district court's granting of the Sec. 2255 motion.
 
 
 
 [1]
 The government maintains this conclusion was verified during the trial of Okezie. Okezie argued, during his trial, that the government's decision not to offer Richards the opportunity to preserve the plea agreement resulted in her invoking her fifth amendment right not to testify at his trial. Hence, Okezie asserted the government improperly denied him the right to call her as a witness
 Both the district court and this court, on appeal, concluded that though the breach of Richards's plea agreement had effectively prevented her from testifying, there was nothing improper in the government's actions. Rather, the court determined, it was Richards's own actions which required her to invoke her fifth amendment right against incriminating herself which thereby precluded her from testifying on Okezie's behalf. United State v. Okezie, No. 92-1583, slip. op. at 19-20, 24 (6th Cir. Jan. 29, 1993) (unpublished opinion).
 
 
 [2]
 The district court judge apparently placed this language his opinion because he realized that the issues raised during the Okezie trial, concerning Richards's availability to testify, might be construed in this case as a finding that Richards had indeed breached her plea agreement. The district court made clear that its statements in the Okezie case addressed the limited issue of whether the government improperly kept Richards from testifying. The court did not address the substantive issues in deciding the merits of whether Richards had breached the plea agreement. Nor could the district court have answered that question during the Okezie trial, because it was only after an evidentiary hearing and careful consideration of the facts pertaining to Richards's case, that the district court had the full record in front of it