**UNITED STATES of America,**

v.

**Michael ANDRELLO, Defendant.**

**No. 92–CR–297.**

United States District Court,
N.D. New York.

March 12, 1993.

Gary L. Sharpe U.S. Atty. Syracuse, NY (Edward R. Broton, Asst. U.S. Atty., of counsel), for U.S.

Frank Policelli, Utica, NY, for Andrello.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

On December 14, 17, and 21, 1992, the court conducted a suppression hearing to determine whether the Government could use the articles recovered during a search of defendant Michael Andrello's residence against him at trial. Prior to this hearing, the court appointed Mr. Walsh to represent Mr. Andrello. After the hearing, Mr. An-

drello notified the court that he was dissatisfied with Mr. Walsh's representation and wished to represent himself at trial. Although the court recognized that a defendant in a criminal action has the right to proceed *pro se*, it advised Mr. Andrello against this course of action. Mr. Andrello, however, was not dissuaded and insisted on representing himself. Nevertheless, in the interest of ensuring that Mr. Andrello's rights were protected, the court retained Mr. Walsh to attend Mr. Andrello in an advisory capacity. During the trial, Mr. Andrello was actively involved in his defense. He did, however, allow Mr. Walsh to make opening and closing statements on his behalf and to help him with the direct and cross-examination of witnesses. On January 4, 1993, following a one week trial, Mr. Andrello was found guilty of three counts relating to his unlawful possession of a silencer and ammunition on August 1, 1991.

By means of post-trial motions, Mr. Andrello now argues that the indictment should be dismissed and that the judgment of conviction should be vacated on the grounds that the Government obtained them, either directly or indirectly, by using his immunized testimony. In addition, Mr. Andrello moves to have this court reconsider or reopen the suppression hearing and to release him pending sentencing. The court will address each of these motions *seriatim*.

## BACKGROUND [1]

It is uncontroverted that in 1987 the Organized Crime Strike Force in the Northern District of New York was investigating racketeering activities in the Utica area. This lengthy investigation eventually culminated in an indictment against five persons. A trial based upon this indictment was conducted in Syracuse during May and June 1990. The acts of racketeering which were the subject of this trial included murder, extortion, bookmaking, loan sharking and interstate transportation of stolen property. The subject matter of this RICO investigation, however, did not include either burglary or unlawful possession of ammunition or silencers.

Mr. Andrello agreed to cooperate with the Government in its RICO investigation and to testify as a witness before the grand jury and at the trial of this matter. In this regard, he signed a cooperation/immunity agreement.[2] According to the Government, this is the only cooperation/immunity agreement that ever existed between Mr. Andrello and either the United States Attorney's Office or the Organized Crime and Racketeering Section Strike Force. *See* Government's Memorandum of Law at 3.

The testimony which Mr. Andrello provided pursuant to this agreement primarily concerned his building of a bomb which one of the defendants used in an attempted murder. During the course of his testimony, however, Mr. Andrello's extensive criminal history was brought to light. Mr. Andrello now contends that the Government breached the August 1987 cooperation agreement by using this immunized testimony, either directly or indirectly, against him both before the grand jury which indicted him as well as during the trial of this case.

## DISCUSSION

### A. The Indictment Is Not Subject to Dismissal

In his motion papers, Mr. Andrello seeks dismissal of the indictment "upon the grounds that *all* the evidence presented to the grand jury ... was obtained directly or indirectly from immunized testimony and information received from the defendant Michael Andrello from 1978 through 1991." *See* Defendant's Notice of Motion at 1 (emphasis added). Despite this bold assertion, however, Mr. Andrello fails to direct the court's attention to any allegedly immunized evidence which was presented to the grand jury.

Moreover, even if Mr. Andrello had presented evidence sufficient to support this claim, he still would not be entitled to a dismissal of the indictment under the circumstances of this case. Federal Rule of Crimi-

1. For purposes of this discussion, the court adopts the Government's recitation of the facts pertaining to its 1987 RICO investigation.

2. This agreement is attached as Exhibit A to Mr. Andrello's motion papers.

nal Procedure 12 provides, in pertinent part, that

> (b) [a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following *must* be raised prior to trial:
>
> (1) Defenses and objections based on defects in the institution of the prosecution; or ·
>
> (2) Defenses and objections based on defects in the indictment ...
>
> (f) Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, ..., shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Fed.R.Crim.P. 12 (1991 Rev.Ed.) (emphasis added). The Advisory Committee Notes concerning subdivisions (b)(1) and (b)(2) identify the types of issues which are to be raised by such motions:

> [t]hese two paragraphs classify into two groups all objections and defenses to be interposed by motion prescribed by Rule 12(a). In one group are defenses and objections which must be raised by motion, failure to do so constituting a waiver. In the other group are defenses and objections which at the defendant's option may be raised by motion, failure to do so, however, not constituting a waiver.... In [this latter] group of objections and defenses, which the defendant at his option may raise by motion before trial, are included all defenses and objections which are capable of determination without a trial of the general issue. They include such matters as ... *immunity*, ...

Fed.R.Civ.P. 12 advisory committee's note (emphasis added).

■ Thus, pursuant to Rule 12, a defendant *may* raise the issue of immunity by pre-trial motion. If he chooses not to do so, however, he still may raise the issue at the appropriate time during trial. *See United States v. Pelletier*, 898 F.2d 297 (2nd Cir. 1990). Although Rule 12 does not specify at what point in time a defendant should be precluded from raising such issues, a number of courts have held that objections such as the one Mr. Andrello raises in his post-trial motion are waived if not raised by the end of trial. *See, e.g., United States v. Roberson*, 872 F.2d 597 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Brimberry*, 744 F.2d 580 (7th Cir.1984), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987).

■ Undoubtedly a line must be drawn some place, and this court is convinced that the "end of trial" is the appropriate place. It cannot be doubted that by that point in time, a defendant has had ample opportunity to raise any objections he might have based upon a claim of immunity. Thus, the court concludes that having failed to seek dismissal of the indictment on the grounds that it was improperly obtained through the use of his immunized testimony either by means of a pre-trial motion or at trial, Mr. Andrello has waived his right to raise this objection at the present time. Accordingly, the court denies Mr. Andrello's motion to dismiss the indictment.

### B. Vacation of Mr. Andrello's Conviction

The Government contends that Mr. Andrello's assertion that his conviction should be vacated either because he is immune from prosecution or because the trial evidence was derived from immunized testimony must fail because (1) the cooperation agreement provided use immunity only for conduct prior to August 27, 1987; (2) neither the Fifth Amendment nor the immunity statutes in question, 18 U.S.C. §§ 6001 *et seq.*, provide prospective immunity; and (3) even if the court were to find that the trial evidence was tainted, its admission amounted to harmless error.

> In *Pelletier*, the Second Circuit stated that [t]o secure a defendant's cooperation ..., the government may informally grant him use immunity in exchange for his cooperation. Since a cooperation/immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles.... Unlike the normal commercial contract, however, due process requires that the government adhere to the terms of any ... immunity agreement it makes.

*Pelletier,* 898 F.2d at 301–02 (citations omitted).

As with all cases involving contract interpretation, the starting point for the court's determination of the meaning of the contract begins with the language of the agreement itself. For purposes of the present motion, the language contained in paragraph 2 is especially significant. This paragraph provides that

> This agreement *is limited* to those statements made by you concerning *acts committed as of the date of this letter* [August 27, 1987] and does *not* limit in any way the right or ability of the Government to *investigate or prosecute crimes occurring after the date of this agreement.*

*See* Letter from Government to Mr. Andrello dated August 27, 1987 at ¶ 2 (emphasis added).

All of the crimes for which Mr. Andrello was indicted and later convicted in this case occurred on August 1, 1991, nearly four years after this agreement was signed. Thus, by the very terms of the agreement, the Government was free to investigate and prosecute Mr. Andrello for these crimes.

Nevertheless, in an attempt to circumvent what appears to this court to be the unambiguous language of this agreement, Mr. Andrello contends that the conduct of the Government after this agreement was signed materially altered its terms. In this regard, Mr. Andrello points specifically to two occasions on which he notified the Government that he had committed a crime. First, sometime in 1989, Mr. Andrello voluntarily surrendered a silencer and blasting caps to Government agents. Secondly, in October 1989, Mr. Andrello purchased a .22 caliber Ruger rifle, a clip and some ammunition and falsified an ATF form with respect to this purchase. The next day, he notified Agents Bleyman and Yetman that he had the rifle, and Agent Porreca went to his home and retrieved it. When Agent Porreca questioned him concerning the whereabouts of the clip and the ammunition, Mr. Andrello stated that his son had fired off all of the ammunition and that he had thrown the clip into the river. *See* McCormack Affidavit at

¶ 7. Despite the Government's knowledge of these crimes, however, it chose not to prosecute him.

Mr. Andrello asserts that the Government's decision not to prosecute him in these two instances led him to reasonably believe that he would not be prosecuted for any crimes he committed as long as he continued to cooperate with the Government. To the contrary, the Government asserts that although it had every right to prosecute Mr. Andrello for these crimes, it chose not to do so for a variety of unspecified reasons. Furthermore, the Government argues that its decision not to prosecute Mr. Andrello on these two occasions did not foreclose his subsequent prosecution for any future crimes he might commit. Finally, the Government distinguishes the two crimes which Mr. Andrello cites from those involved in the present case on the grounds that Mr. Andrello did not voluntarily surrender the items that he illegally possessed on August 1, 1991.

Mr. Andrello does not contend that the terms of the August 27, 1987, cooperation/immunity agreement are ambiguous. Rather, he asserts only that the subsequent conduct of the Government; i.e., its decision not to prosecute him for two crimes committed subsequent to the agreement, materially altered the terms of that agreement such that he reasonably believed he would not be prosecuted for any future crimes he might commit as long as he continued to cooperate with the Government. In this regard, it is interesting to note that Mr. Andrello does *not* claim that any Government agent or attorney ever told him that he would not be prosecuted for future crimes as long as he continued to cooperate. He simply asserts that he "reasonably believed" that this was the case. Unfortunately for Mr. Andrello, the court requires more than his unsupported statement to this effect to sustain a finding that it was reasonable for him to believe that the Government would not prosecute him for crimes committed after August 27, 1987. Without such evidence, the court must conclude that Mr. Andrello could not have reasonably believed, based solely upon the Government's two decisions not to prosecute him, that he would not be prosecuted for any

future crimes he might commit as long as he continued to cooperate with the Government. Accordingly, the court holds that, pursuant to the terms of the August 1987 agreement, the Government was free to prosecute Mr. Andrello for the crimes charged in the indictment.

This conclusion, however, does not end the court's inquiry. Although it is entitled to prosecute Mr. Andrello for the crimes he committed on August 1, 1991, the Government may not use any of Mr. Andrello's immunized testimony, received as a result of this agreement, either directly or indirectly, in its prosecution of these crimes. In support of his contention that the Government elicited testimony at trial which was derived from his immunized testimony, Mr. Andrello objects only to the testimony of Agent Lawrence and Mr. Muscarella. With respect to Agent Lawrence, Mr. Andrello's attorney, Mr. Policelli, states in his affidavit that "the testimony of Agent Lawrence at both the Suppression Hearing and trial was replete with information derived solely from the immunized evidence given by Andrello (See Suppression Hearing pps. 151, 155, 159; trial testimony pps. 5, 68, 69)." *See* Policelli Affidavit at ¶ 12.

The court has carefully reviewed the testimony to which Mr. Andrello objects. On page 5 of the trial transcript Agent Lawrence's testimony concerns the silencer which the agents found in Mr. Andrello's basement and Mr. Andrello's unsolicited statement that the silencer was old and had been there for awhile. *See* Transcript of Lawrence's Testimony at 5. Pages 68 and 69 of this same transcript pertain to the Government's redirect examination of Agent Lawrence concerning his understanding of the nature of a burning bar. Mr. Andrello objected to this line of questioning, and the court sustained the objection. The next line of questioning concerned Agent Lawrence's investigation in April 1991 of the Barge Canal Gang and its possible participation in a December 1990 burglary of a Jamesway store in Tamaqua, Pennsylvania. *See* Transcript of Lawrence's Testimony at 68–69. Likewise, Agent Lawrence's testimony at the suppression hearing on pages 151, 155, and 159 concerned this

same investigation. *See* Transcript of Suppression Hearing at 151, 155, 159.

Mr. Andrello also claims that "the testimony from Mr. Muscarella was derived from immunized testimony that Andrello gave at the *Minicone* trial (pg. 96 of *Minicone* Trial)." *See* Policelli Affidavit at ¶ 15. Mr. Andrello did not identify the specific content of his testimony at the *Minicone* trial nor did he provide the court with a copy of the transcript of the *Minicone* trial. Mr. Muscarella's trial testimony, however, was very limited. He identified two boxes of ammunition found in Andrello's house as having been sold by his store after June 1986. He also stated that Mr. Andrello purchased ammunition and an extended magazine from his store on October 2, 1989. *See* Transcript of Muscarella Testimony at 5.

■ Clearly the testimony of Agent Lawrence and Mr. Muscarella relates to crimes committed after August 27, 1987. Nevertheless, Mr. Andrello contends that he is immunized from prosecution for these crimes because, along with the crimes he committed prior to August 27, 1987, they constitute a continuing course of criminal activity. In *United States v. Gallo* 859 F.2d 1078 (2d Cir.1988), *cert. denied sub nom., Miron v. United States*, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989), the Second Circuit was faced with a similar argument. In *Gallo*, the defendant's immunized grand jury testimony had been used inadvertently to support a wiretap application. This grand jury testimony had been given in 1980 and related to events that occurred in the 1970's. Subsequently, the defendant was indicted and charged with crimes that occurred between 1981 and 1983. The defendant moved to dismiss the indictment or, in the alternative, to suppress evidence on the grounds that his immunized 1980 grand jury testimony was used to develop evidence that led to his indictment for crimes he committed after this testimony was given. To the contrary, the Government argued that because the crimes committed by the defendant occurred after he gave his immunized testimony, the use of that testimony in securing the indictment and his conviction violated neither the

Fifth Amendment nor the immunity statute. *Gallo,* 859 F.2d at 1081.

Relying upon *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), the court rejected the Government's argument for the imposition of an inflexible "chronological formula." Instead, the court adopted *Marchetti's* "substantiality of the risks of incrimination" test as the proper standard. *Gallo,* 859 F.2d at 1081 (citing *Marchetti,* 390 U.S. at 54, 88 S.Ct. at 706). In *Marchetti,* the Supreme Court had held that the registration provisions of the gambling tax statutes were unconstitutional on the ground that "[p]rospective registrants can reasonably expect that registration ... will *significantly enhance the likelihood of their prosecution for future acts,* and that it will readily provide evidence which will facilitate their convictions." *Id.* (emphasis added) (quoting *Marchetti,* 390 U.S. at 54, 88 S.Ct. at 706).

Although a concurring opinion, Judge Van Graafeiland's discussion of this issue is also instructive.[3] In Judge Van Graafeiland's opinion, "[*Gallo* ] squarely presents the issue whether Justice Powell's broad language in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), was intended to mean that a grant of immunity under section 6002 will provide derivative use immunity for crimes not yet committed or even contemplated when the grant was made." *Gallo,* 859 F.2d at 1087. Judge Van Graafeiland noted that "the traditional, long-settled constitutional rule was that the privilege against self-incrimination 'has relation only to past acts, not to future acts that may or may not be committed.' " *Gallo,* 859 F.2d at 1087 (quoting *United States v. Kahriger,* 345 U.S. 22, 32, 73 S.Ct. 510, 515, 97 L.Ed. 754 (1953)). Although Judge Van Graafeiland acknowledged that in *Marchetti* the Supreme Court had abandoned the rigid chronological distinction between past and future

criminal actions, he noted that the *Marchetti* Court also had recognized that " 'prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination.' " *Gallo,* 859 F.2d at 1087 (quoting *Marchetti,* 390 U.S. at 54, 88 S.Ct. at 705 (other citations omitted)). Thus, Judge Van Graafeiland concluded that "the only hazards of incrimination that are likely to be considered substantial and real are those which relate to existing or past misdeeds or a *continuing course of criminal activity.*" *Gallo,* 859 F.2d at 1088 (emphasis added) (citing *United States v. Quatermain, Drax,* 613 F.2d 38, 42–43 (3d Cir.), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980)).

In the present case, there is no evidence to suggest that Mr. Andrello contemplated the crimes for which he was convicted in the present case at the time he gave his testimony to the grand jury and at the *Minicone* trial. Nor is there any indication, other than Mr. Andrello's bald assertion to that effect, that the crimes for which he was indicted in the present case are related to the activities involved in the RICO prosecution such as to constitute a "continuing course of criminal activity." In fact, the only evidence which the court has concerning this issue is to the contrary.

In support of its position that the statements of Agent Lawrence and Mr. Muscarella were not derived from Mr. Andrello's immunized testimony, the Government submitted the affidavit of AUSA Kevin McCormack. Mr. McCormack was responsible for interviewing Mr. Andrello prior to his testimony at the *Minicone* trial. With respect to the October 2, 1989, purchase about which Mr. Muscarella testified, Mr. McCormack asserts that

> the 1987 cooperation agreement did not provide Andrello with immunity for the 1990 [sic] Ruger transaction.[4] That agreement expressly related only to crimes com-

---

3. It should be noted that in *United States v. Rivieccio,* 919 F.2d 812 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991), the Second Circuit agreed with Judge Van Graafeiland's conclusion that "the legislative history of 18 U.S.C. §§ 6002 and 6003 shows that 'Congress did not intend that a violation of those sections would result in a *per se*

constitutional injury requiring dismissal of the indictment.' " *Rivieccio,* 919 F.2d at 816 (quoting *Gallo,* 859 F.2d at 1090).

4. It is evident from reading Mr. McCormack's affidavit in its entirety that he is referring to the 1989 Ruger transaction.

mitted prior to August 27, 1987. That Andrello was not immune is demonstrated by the fact that ATF investigated the matter and forwarded a report to my office for prosecution.

*See* McCormack Affidavit at ¶ 8.

Moreover, prior to Mr. Andrello's testimony at the *Minicone* trial, Mr. McCormack states that although he

> told Andrello that he would not be prosecuted for the violations relating to the purchase of the .22 caliber rifle.... At no time did [Mr. McCormack] tell Mr. Andrello that he would have immunity or not be prosecuted for any future crimes he might commit. Moreover, [Mr. McCormack] made no agreement with Mr. Andrello whereby he was promised that the Government would not use the evidence concerning the Ruger transaction against him in any future prosecutions on charges unrelated to his purchase of the rifle and false statement on the ATF 4473 form.

*See* McCormack Affidavit at ¶¶ 10, 11.

Finally, Mr. McCormack states that

> Andrello testified on May 23 and 24, 1990. Andrello was briefly asked about the circumstances surrounding the purchase of the rifle and its recovery by Agent Porreca on direct examination by your affiant. No mention was made of the purchase of ammunition or clip. Andrello was not asked any questions concerning this transaction on cross-examination.

*See* McCormack Affidavit at ¶ 12.

Based upon this evidence as well as the unambiguous language of the agreement itself, the court concludes that the testimony of Agent Lawrence and Mr. Muscarella concerning crimes committed after August 27, 1987, was unrelated to any acts that Mr. Andrello committed prior to that date. Therefore, the court holds that this testimony was not derived from the immunized testimony of Mr. Andrello and, thus, was properly admitted.[5] Accordingly, the court denies Mr. Andrello's motion to vacate the judgment of conviction.

### C. Motion to Reconsider or Reopen the Suppression Hearing

■ Mr. Andrello asks the court to reconsider or to reopen the suppression hearing on two grounds: (1) the use of immunized evidence and information obtained from him tainted the hearing and (2) the 1987 cooperation/immunity agreement affected his state of mind on the issue of whether his consent was an unconstrained choice. *See* Defendant's Notice of Motion at 2. Federal Rule of Criminal Procedure 12 governs the court's consideration of this motion. Rule 12(b) provides that motions to suppress evidence *must* be raised prior to trial. Furthermore, a defendant who fails to raise such an objection prior to trial waives his right to do so at a later time. Fed.R.Crim.P. 12(f). Rule 12(f) provides, however, that the court "for cause shown" may grant relief from such a waiver.

Mr. Andrello timely moved to suppress the use of the items recovered as a result of the search of his home on August 1, 1991. In response to this motion, the court conducted a hearing during which Mr. Andrello had ample opportunity to present all of his arguments as to why this evidence should be suppressed. At no time during that hearing, did he raise his present objections. Thus, having failed to do so at the appropriate time, he has waived his right to raise these objections now. Furthermore, he has not demonstrated any reason why this court should grant him relief from this waiver. Accordingly, the court denies Mr. Andrello's motion to reconsider or reopen the suppression hearing.

### D. Motion to Release Mr. Andrello Pending Sentencing [6]

■ Mr. Andrello contends that because the Magistrate relied upon tainted evidence to support his conclusion that Mr. Andrello was a danger to the community and thus should be detained pending trial, he should

---

5. Given this conclusion, the court has no need to address the Government's alternative arguments in opposition to Mr. Andrello's vacation motion.

6. Mr. Andrello's counsel did not address this request at oral argument. Nevertheless, in the interest of being thorough, the court will discuss it briefly.

now be released pending sentencing... *See* Policelli Affidavit at ¶ 18. Specifically, Mr. Policelli states that the Magistrate should not have relied upon (a) the fact that Andrello admitted that he has the ability to manufacture bombs, nitroglycerin, and silencers; (b) the October 1989 purchase of a .22 caliber rifle; (c) the February 12, 1991, incident on which Andrello surrendered nitroglycerin; and (d) the evidence seized on August 1, 1991. *See* Policelli Affidavit at ¶ 19.

Since he has been found guilty following a trial, Mr. Andrello's status is no longer controlled by the pretrial detention order. Rather, the question of his release or detention is now governed by 18 U.S.C. § 3143(a) which provides, in pertinent part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under Section 3142(b) or (c).

18 U.S.C. § 1343(a) (West 1992 Supp.).

Given the fact that the court has concluded that evidence concerning crimes committed after August 27, 1987, is not derived from Mr. Andrello's immunized testimony, the court has before it ample facts to support a conclusion that Mr. Andrello poses a danger to the community. Furthermore, in support of this request, Mr. Andrello has presented the court with no facts to refute such a conclusion. Accordingly, the court denies Mr. Andrello's motion to be released pending sentencing.

## CONCLUSION

For the reasons stated above, the court denies Mr. Andrello's motion to dismiss the indictment. Likewise, the court denies his motion to vacate the judgment of conviction. The court also concludes that he has waived his right to have this court consider his new arguments to suppress the allegedly tainted evidence. Finally, the court denies Mr. An-

drello's motion to be released pending sentencing.

IT IS SO ORDERED.