UNITED STATES of America, Appellee,

v.

Remi PELLETIER and Robert Pelletier, Defendants–Appellants.

Nos. 555, 556, Dockets 89–1292, 89–1293.

United States Court of Appeals, Second Circuit.

Argued Dec. 21, 1989.

Decided March 6, 1990.

William J. Dreyer, Albany, N.Y. (Dreyer, Boyajian & Tuttle, Albany, N.Y., of counsel), for defendant-appellant Remi Pelletier.

Terence L. Kindlon, Albany, N.Y., for defendant-appellant Robert Pelletier.

Bernard J. Malone, Jr., Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty. N.D.N.Y., Albany, N.Y., of counsel), for appellee.

Before TIMBERS, CARDAMONE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The principal issue on this appeal is whether the government may use testimony obtained under an informal grant of use immunity to obtain indictment and convictions on nonperjury counts, in violation of its express agreement to use the immunized testimony only in a prosecution for perjury. We hold that it may not and accordingly reverse and remand. The issue, we suspect, is of only marginal significance in the operation of our federal criminal justice system, because in most cases the government either obtains a formal immunity order pursuant to 18 U.S.C. §§ 6002–6003, or enters into a written cooperation/immunity agreement. Typically, such written agreements provide, in the event of a breach by the witness, for use of the immunized testimony "for any federal criminal violation" upon breach of agreement. For example, in *United States v. Doe*, 671 F.Supp. 205, 206 n. 1 (E.D.N.Y. 1987), the agreement provided:

It is further understood that [John Doe] must at all times give complete, truthful and accurate information and testimony. Should it be judged by this office that he has intentionally given false, misleading or incomplete information or testimony or has otherwise violated any provision of this agreement, this agreement may be deemed null and void by this office and [John Doe] shall thereafter be subject to prosecution for any federal criminal violation of which this office has knowledge, including but not limited to perjury and obstruction of justice. Any such prosecution may be premised upon any information provided by [John Doe] during the course of cooperation and such information may be used against him. Also, any previously entered plea of guilty will stand.

*See also United States v. Stirling*, 571 F.2d 708, 730 n. 16 (2d Cir.), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *United States v. Castelbuono*, 643 F.Supp. 965, 974 (E.D.N.Y.1986) (Appendix ¶ 3).

In any event, because the government in this case violated the specific agreement now before us by using the defendants' immunized testimony at trial without limiting it to the nonperjury charges, defendants are entitled at least to a new trial. Upon remand, however, the district court should first determine if the immunized testimony was also presented to the grand jury in support of the remaining nonperjury count of the indictment. If so, the indictment should be dismissed unless the use constituted harmless error.

## I. BACKGROUND

Defendants Remi and Robert Pelletier were each convicted in the United States District Court for the Northern District of New York, Con. G. Cholakis, *Judge*, of one count of conspiracy to obstruct the due and proper administration of the law, to make and use a false writing or document, to suborn perjury, to defraud the United

States and the United States Customs Service, and to commit perjury before a grand jury, in violation of 18 U.S.C. § 371. They were acquitted on the other six counts of the indictment, including the perjury counts. Each asserts that in obtaining his indictment and conviction the government impermissibly relied on his own immunized grand jury testimony in derogation of an oral cooperation/immunity agreement that limited permissible use of the testimony solely to a prosecution for perjury.

On February 20, 1987, Remi and Robert were arrested for violating the Monetary Reporting Act, 31 U.S.C. § 5316, specifically for failing to declare to the United States Customs Service approximately $235,000 in currency that they had brought into the United States. A month later they were indicted for conspiracy to violate 31 U.S.C. § 5316 and several other conspiracy and substantive counts, all focusing on their unlawful transportation of money into the United States.

On September 24, 1987, they entered into unwritten cooperation/immunity agreements with the office of the United States Attorney for the Northern District of New York, which permitted them to plead guilty to a single count of conspiracy to violate § 5316 in exchange for their deposition or grand jury testimony about the source and destination of the money that had been seized at the border.

In satisfaction of the agreements, the Pelletiers, on November 5, 1987, separately testified before a grand jury. Because the immunity agreements were never reduced to writing, the only evidence of their terms is the transcript of their testimony before the November 5 grand jury.

When Remi was questioned, the following exchange occurred:

> Q. There was an agreement between you and your brother * * * and the government that you would be allowed to plead guilty to one count of the indictment and that you would either give a sworn deposition or testify before a grand jury in connection with the source and destination of approximately $235,-000 in U.S. currency which was received from the three of you on February 20th?
>
> A. Yes.
>
> Q. It is also part of that agreement that *anything that you say before this grand jury you cannot be prosecuted for; you have immunity to the extent your testimony cannot be used against you in any criminal proceeding;* do you understand that?
>
> A. Yes.
>
> Q. However, you also understand, do you not, that *in the event that you intentionally lie[ ] under oath before this grand jury that you can be prosecuted for perjury?*
>
> A. Yes.

*Transcript,* Grand Jury Testimony of Remi Pelletier, November 5, 1987, p. 3 (emphasis added).

When Robert was questioned, a similar colloquy transpired:

> Q. As I have told your attorney, *your testimony here today,* your sworn testimony, *cannot be used against you in any criminal proceeding,* so that you have immunity from being prosecuted by the United States Attorney's Office *for anything that you say here* so long as that testimony is in response to a question that is asked of you; do you understand that?
>
> A. Yes, I do.
>
> Q. Do you also understand that while you cannot be prosecuted for anything that you state here today, *you can be prosecuted for perjury in the event that you intentionally lie;* do you understand that?
>
> A. Yes.

*Transcript,* Grand Jury Testimony of Robert Pelletier, November 5, 1987, p. 3 (emphasis added).

In short, both agreed to testify, and in return the government agreed that their testimony would not be used against them "in any criminal proceeding", except each could be "prosecuted for perjury in the event that [he] intentionally lie[d]."

In the government's view, both Remi and Robert, when they testified, lied to the

grand jury about the source and destination of the seized money. They testified that various Canadian citizens, including David Jacobsen and Richard Camacho, gave them the money to invest in real estate in Idaho and to exchange for United States currency.

Prior to the November 5 grand jury testimony, Jacobsen and Camacho had appeared, on August 4, 1987, before a United States Customs agent and claimed ownership of the money seized from the Pelletiers. On October 28, 1987, also prior to the Pelletiers' grand jury appearance, Jacobsen, Camacho, and other Canadian citizens had submitted to United States Customs documents called "petitions for remission" in which they again falsely claimed to own the money. In early 1988, however, Jacobsen and Camacho changed their stories, admitted that their claims to ownership of the money were false, and stated that in the spring of 1987 Robert Pelletier had asked them to claim the money by filing false petitions for remission.

On July 14, 1988, the Pelletiers were indicted for a second time. The seven-count indictment alleged (1) conspiracy to impede the proper administration of law before a department or agency of the United States, to suborn perjury, to make and use a false writing or document before the United States Customs Service, to defraud the United States and the United States Customs Service, to commit perjury, all in violation of 18 U.S.C. § 371; (2) obstruction of proceedings before a department of the United States government, in violation of 18 U.S.C. § 1505; (3) subornation of perjury, in violation of 18 U.S.C. § 1622; (4) making and using false statements and documents, in violation of 18 U.S.C. § 1001; (5) conspiracy to cause false documents to be filed with the Customs Service, in violation of 18 U.S.C. § 371; (6) Remi's perjury before the grand jury, in violation of 18 U.S.C. § 1623(a); and (7) Robert's perjury before the grand jury, in violation of 18 U.S.C. § 1623(a).

Jacobsen and Camacho testified before the second grand jury. The Pelletiers contend, however, that the government presented in addition their entire immunized testimonies. They base this assertion on the following discussion between the trial judge and assistant United States attorney:

THE COURT: The defendants did not testify at [the second] grand jury proceeding[.]

MR. MALONE: No, your Honor.

THE COURT: You used the testimony from the first grand jury proceeding before [the second] grand jury?

MR. MALONE: Yes, I did, Your Honor.

*Transcript,* Post Trial Motion, May 25, 1989.

The government contends that this discussion does not establish that it used any immunized testimony before the second grand jury. In view of its clear admission to the court that it did use immunized testimony and its asserted failure to investigate the matter prior to oral argument, that contention is disingenuous. The government also asserts, however, and we agree, that even if some immunized testimony were used, the extent of such use cannot be distilled from the above conversation alone. This factual controversy and its legal import for defendants' challenge to the indictment require further inquiry by the district court upon the remand we are ordering.

With respect to use of the immunized testimony at trial, however, there is no dispute that the government introduced, over objection, all the Pelletiers' allegedly false immunized testimony as well as portions of their concededly truthful immunized testimony, and that no instruction was given to limit use of that evidence to the two perjury counts.

The jury convicted both Remi and Robert only of the conspiracy to defraud the United States alleged in count one of the indictment; it acquitted them on all other counts, including the perjury charges. They each received a sentence of thirteen months to run consecutively with the terms of imprisonment they were then serving on their earlier guilty pleas. They now appeal.

## II. DISCUSSION

Remi and Robert argue that their cooperation/immunity agreements conferred use immunity which precluded the government from using either their immunized testimony or evidence directly or indirectly derived from that testimony in any criminal prosecution except one for perjury. Accordingly, they argue that use of their immunized testimony before the grand jury mandated dismissal of the nonperjury charges in the indictment, including the conspiracy charge—the only one on which they were convicted. Alternatively, they contend that use of the immunized testimony at trial requires reversal and remand for a new trial on the conspiracy count, and that on the retrial, neither the immunized testimony nor any evidence derived directly or indirectly therefrom may be used.

In response, the government asserts, first, that the Pelletiers waived their challenge to the indictment by failing to raise the immunity defense by pretrial motion under Fed.R.Crim.P. 12(b), and, second, that although the agreements did confer use immunity, defendants' breaches of their promises to testify truthfully abrogated the agreements and rendered use of the testimony permissible for any and all crimes. We reject both of the government's contentions.

### A. *Waiver*

 A challenge to an indictment on the basis that it was improperly obtained through use of immunized testimony is timely under rule 12(b) if presented either by pretrial motion or at trial. *United States v. Roberson*, 872 F.2d 597, 610 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Black*, 776 F.2d 1321, 1324 (6th Cir.1985) (defendant's motion, made at beginning of trial, to dismiss indictment on basis of immunity agreement permitted without discussion of timeliness); *United States v. Brimberry*, 744 F.2d 580, 586–87 (7th Cir. 1984), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987); *see* 1 C. Wright, *Federal Practice and Procedure*, § 193, at 705–08 (2d ed. 1988); 8 J. Moore,

*Moore's Federal Practice* ¶¶ 12.02[1], 12.03 (2d ed. 1989). *See also* Fed.R.Crim.P. 12(b), Advisory Committee Note to Subdivision (b)(1) and (b)(2):

> These two paragraphs [12(b)(1) and (b)(2)] classify into two groups all objections and defenses to be interposed by motion prescribed by Rule 12(a). * * * In the [second] group are defenses and objections which at the defendant's option may be raised by motion, failure to do so, however, not constituting a waiver. * * *
>
> * * * *. * *
>
> In the [second] group of objections and defenses, which the defendant *at his option* may raise by motion before trial, are included all defenses and objections which are capable of determination without a trial of the general issue. They include matters such as former jeopardy, * * * statute of limitations, [and] *immunity* * * *.

Fed.R.Crim.P. 12(b), Advisory Committee Note (emphasis added).

Because the Pelletiers raised their immunity defense to the indictment at trial along with their evidentiary challenge to the admission of the immunized evidence at trial, they properly preserved the challenge.

### B. *Effect of Breaches of the Informal Immunity Agreements*

We also reject the government's second contention that defendants' breaches of their agreements to testify truthfully abrogated their immunity protection.

 To secure a defendant's cooperation and plea, the government may informally grant him use immunity in exchange for his cooperation. Since a cooperation/immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles. *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir.1988); *United States v. Brown*, 801 F.2d 352, 354 (8th Cir.1986); *United States v. Harvey*, 791 F.2d 294, 300–01 (4th Cir.1986); *United States v. Irvine*, 756 F.2d 708, 710–11 (9th Cir.1985). The remedies available in event of breach, *see, e.g., Irvine*, 756 F.2d at

710–12; *United States v. Stirling*, 571 F.2d at 731–32, as well as the conditions constituting breach, *see, e.g., United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988), are governed by the agreement. Unlike the normal commercial contract, however, due process requires that the government adhere to the terms of any plea bargain or immunity agreement it makes. *See Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *United States v. (Jerry) Harvey*, 869 F.2d 1439, 1443–44 (11th Cir.1989); *Innes v. Dalsheim*, 864 F.2d 974, 978 (2d Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989); *In re Arnett*, 804 F.2d 1200, 1202–03 (11th Cir.1986); *Harvey*, 791 F.2d at 300.

▮▮▮ The terms of the cooperation agreements at issue were spelled out by the prosecutor in the brief sequences set forth in the November 5, 1987, grand jury transcripts. As to Remi, the agreement provided:

It is also part of that agreement that anything that you say before this grand jury you cannot be prosecuted for; you have immunity to the extent your testimony cannot be used against you in any criminal proceeding * * *.

\* \* \* \* \* \*

However, you also understand, do you not, that in the event that you intentionally lie[ ] under oath before this grand jury that you can be prosecuted for perjury?

With respect to Robert, the agreement provided:

[Y]ou have immunity from being prosecuted * * * for anything that you say here * * *[.]

\* \* \* \* \* \*

[Y]ou also understand that while you cannot be prosecuted for anything that you state here today, you can be prosecuted for perjury in the event that you intentionally lie * * *.

The parties do not claim that this language conferred use immunity under 18 U.S.C. §§ 6002–6003. Rather, the scope and consequences of the immunity conferred are governed by the terms of the agreements. *See Irvine*, 756 F.2d at 711; *Castelbuono*, 643 F.Supp. at 969. The specific terms of these agreements contemplated use, rather than transactional, immunity and thus prohibited the government's direct or derivative use of the immunized testimony. *See generally Kastigar v. United States*, 406 U.S. 441, 448–62, 92 S.Ct. 1653, 1658–65, 32 L.Ed.2d 212 (1972). The terms of the agreements, however, also clearly specified that the sole remedy for false testimony would be a prosecution for perjury, *e.g.,* "* * * while you cannot be prosecuted for anything that you state here today, you can be prosecuted for perjury in the event that you intentionally lie * * *." *See Packwood*, 848 F.2d at 1012 (government held to literal terms of plea agreement that only materially false statement, not incomplete statement, constituted breach); *see also Innes*, 864 F.2d at 979 (state must bear burden of any lack of clarity in agreement, and ambiguities are to be resolved in favor of defendant); *In re Arnett*, 804 F.2d at 1202–04 (ambiguous plea agreement read against government). Having granted use immunity and having further limited itself to using the Pelletiers' grand jury testimony against them only in the event the Pelletiers intentionally lied, and even then only in a prosecution for perjury, the government was not free to use that testimony either to indict or to obtain convictions on nonperjury charges. In an attempt to preserve its convictions on the nonperjury conspiracy count, the government sought to show in the district court that all the evidence it used was "derived from a legitimate source wholly independent of the compelled testimony." *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665; *see also United States v. Schwimmer*, 882 F.2d 22, 25 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *Unit-*

*ed States v. Mariani*, 851 F.2d 595, 599–601 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989); *United States v. Kurzer*, 534 F.2d 511, 516 (2d Cir.1976). The trial court was satisfied that because the identities of Jacobsen, Camacho, and the other false claimants of the money were known prior to the Pelletiers' immunized testimony and because those claimants later recanted voluntarily, there was an independent source for all the evidence used to convict. It concluded that defendants' motion for a new trial should be denied. We disagree.

■ Although the government did have independent sources for some of the evidence used at trial, the government also made direct use of the immunized evidence. The government cannot escape its error simply by showing the availability of "wholly independent" evidence from which it might have procured indictment or conviction had it not used the immunized testimony. *See, e.g., United States v. Gallo*, 859 F.2d 1078, 1082–83 (2d Cir.1988) (dissenting judge and one member of majority find *per se* violation of fifth amendment and use immunity statute where prosecution made direct use of one paragraph of defendant's immunized testimony in affidavit asserting probable cause to obtain wiretap from which incriminating evidence was obtained and used to indict defendant; divided panel held error harmless on narrow facts of case), *cert. denied,* —— U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *United States v. Nemes*, 555 F.2d 51, 54 n. 3 (2d Cir.1977) ("[i]f the indictment had been obtained by direct or derivative use of immunized testimony, it would have been subject to dismissal"); *United States v. Kurzer*, 534 F.2d at 515 (uncontested that none of the immunized testimony was itself used in obtaining indictment). The deliberate direct use at trial of all of a defendant's immunized grand jury testimony in violation of the government's express agreement to the contrary violates due process, *see, e.g., Santobello*, 404 U.S. at 262, 92 S.Ct. at 498, and cannot be considered harmless error. *Cf. Gallo*, 859 F.2d at 1082–84 (harmless error to make direct use in wiretap application of immunized testi-

mony where (1) prosecutor who used the testimony did not know it was immunized; (2) use was inadvertent; (3) only one paragraph of immunized testimony was used; (4) tainted testimony was used only in affidavit asserting probable cause to obtain a wiretap, from which incriminating evidence was ultimately obtained; and (5) there was substantial other evidence of probable cause in the affidavit to obtain the wiretap); *United States v. Nersesian*, 824 F.2d 1294, 1320 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987).

In short, because all of the Pelletiers' false immunized testimony as well as portions of their truthful immunized testimony was deliberately used at trial, over objection, and no instruction was given limiting its use to the perjury counts against Remi and Robert, there must be a new trial if the district court does not dismiss the indictment. But before having a new trial the district court must give further attention to the dispute over the extent of use of the immunized testimony before the grand jury. If the government used the Pelletiers' immunized testimony to secure indictment on the nonperjury conspiracy count, the only count on which Remi and Robert were not acquitted, then the district court should dismiss the indictment, unless the immunized testimony presented was so minimal or of such inconsequential nature in light of the other evidence before the grand jury as to constitute harmless error, *see Gallo*, 859 F.2d at 1082–84; *Nersesian*, 824 F.2d at 1320; *United States v. Byrd*, 765 F.2d 1524, 1529 n. 8 (11th Cir.1985); *United States v. Beery*, 678 F.2d 856, 860 & n. 3 (10th Cir.1982) (if defendant's use immunity, granted in bankruptcy proceeding pursuant to 11 U.S.C. § 25(a)(10), is violated by direct or derivative use before grand jury, indictment must be dismissed unless error is harmless), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). If satisfied that no tainted testimony was presented to the grand jury on that count, or that any error was harmless, the district court need not dismiss the indictment and should proceed with the new trial.

Upon any new trial, the government may use only that evidence the district court finds to have been derived from legitimate sources wholly independent of the Pelletiers' immunized testimony. *Kastigar*, 406 U.S. at 448–60, 92 S.Ct. at 1658–64.

### C. *Fifth Amendment Right to Silence*

Because of our disposition of the immunity issue, we need not reach the Pelletiers' additional argument that closing remarks of the prosecutor necessarily directed the jury to the Pelletiers' failure to testify in violation of their fifth amendment right to remain silent. We suggest to prosecutors, however, that somewhat less dramatic summations would make unnecessary our ever having to reach the difficult questions that this kind of argument necessarily raises.

### III. CONCLUSION

The district court erred in permitting the government to make direct use at trial of testimony obtained under a grant of informal use immunity. The case is remanded for the district court to determine whether the immunized testimony was presented to the grand jury in obtaining the remaining conspiracy count of the indictment. If so, the indictment must be dismissed unless the district court determines that the use constituted harmless error. If the indictment is not dismissed, then there shall be a new trial at which only evidence not directly or derivatively obtained from the Pelletiers' immunized testimony may be used.

Reversed and remanded.