UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1485

IN RE: GRAND JURY

JOHN DOE,

Appellant.

ERRATA SHEET

The opinion of this Court issued on May 27, 1993 is amended as
follows:

Page 7, III, Line 2: Sentence should read "If the government in
exchange for cooperation bound itself not to ask appellant any further
questions about rent, then under the case law he was not obliged to
answer."

May 27, 1993
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1485

IN RE: GRAND JURY

JOHN DOE,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Selya, Boudin and Stahl,
Circuit Judges.

Morris M. Goldings, Alice E. Moore, and Mahoney, Hawkes &

Goldings on brief for appellant.

A. John Pappalardo, United States Attorney, Fred M. Wyshak, Jr.

and Brian T. Kelly, Assistant United States Attorneys, on brief for

appellee.

Per Curiam. Appellant has appealed from an order

of the district court holding him in civil contempt for

refusing to testify as a witness before a grand jury. See 28

U.S.C. 1826(a). The district court granted appellant's

request for bail pending appeal, finding that the appeal was

not frivolous or taken for delay. Id. 1826(b).

I.

Appellant's relationship with the government began

in July 1987 when he was served a subpoena to testify before

a grand jury investigating money laundering, particularly in

relation to Heller's Cafe and Michael London. Appellant,

through his attorney, informed the government that he

intended to assert his Fifth Amendment right against self-

incrimination. The government then obtained an order of

immunity under 18 U.S.C. 6002 and 6003.

Prior to appearing before the grand jury, appellant

and his attorney met informally with Mitchell Dembin, the

assistant United States Attorney in charge of the

investigation, and other law enforcement officers. At this

pre-grand jury meeting, appellant's attorney advised Dembin

that appellant would refuse to answer any questions -- either

informally or before the grand jury -- regarding the payment

of "rent."1 Appellant did provide, on an informal basis,

1. According to the district court, "rent" is a term used to
refer to extortionate payments that bookmakers have, at
times, been required to make to certain organized crime
figures.

other information about general gambling practices directly

to Dembin.

According to Dembin's affidavit submitted to the

district court, he had stated to appellant that he would not

ask appellant any questions concerning rent before the grand

jury or inquire into the identities of those running the

bookmaking organization for which appellant then worked.

Dembin asserts, in the affidavit, that he had made this

decision on the ground that the "circumstances of

[appellant's] `rent' and his current employment situation

appeared to be beyond the scope of the Heller's Cafe

investigation." Consequently, Dembin did not ask about rent

when appellant appeared before the grand jury in early

January 1988. It is undisputed, however, that Dembin was

aware that the Organized Crime Strike Force was then

investigating allegations that certain organized crime

figures were requiring bookmakers to pay rent to them.

In December 1990, appellant received a second

subpoena to appear before a grand jury. At this time, Mark

Pearlstein was the assistant United States Attorney involved

with the grand jury proceedings. He was investigating a

check-cashing business suspected of money laundering on

behalf of bookmakers. A second immunity order was obtained.

Appellant again met with prosecutors on an informal basis and

provided them with information concerning betting practices

-4-

and procedures. In his affidavit, Pearlstein acknowledges

that he was aware that Dembin had refrained from asking

appellant about rent. He followed the same path because the

subject of rent payments "was of little direct relevance to

the investigation" he was conducting. Accordingly, when

appellant appeared before the grand jury in January 1991, he

was not asked about rent.

In February 1992, appellant made a third appearance

before a grand jury. According to appellant, he was informed

that this was the same grand jury before which he had

appeared in 1991. This time, the two United States Attorneys

who questioned appellant were connected to the Strike Force

and were investigating the payment of rent. As a result,

appellant was questioned on this subject; he testified that

he did not pay rent. Appellant did not mention, during this

grand jury appearance, any agreement or promise by the

government that he would not be asked such questions.

Also, in January 1993, appellant testified at the

trial of Michael London. Before giving his testimony, he met

with the prosecutors for five to eight hours and answered

many inquiries concerning betting practices and procedures;

nonetheless, he was not questioned about rent. At trial,

however, appellant was asked by the prosecution whether he

paid rent to certain individuals. He stated, as he had

before the grand jury, that he did not pay rent. After it

-5-

was learned that appellant had given false answers concerning

rent payments (both at the 1992 grand jury and the London

trial), appellant was recalled to the stand in the London

trial. He then admitted that he had given incorrect

information, but declined to identify anyone to whom he had

paid rent.2 He again did not mention any agreement to the

effect that he did not have to answer such questions.

II.

This brings us to the present. Appellant, on April

8, 1993, appeared for the fourth time before the grand jury.

Again, this grand jury proceeding was represented as a

continuation of the prior grand jury investigations.3

Appellant now refused to answer any questions concerning

rent. Upon the government's petition for contempt, the

district court held a hearing at which appellant testified.

He asserted that his refusal to testify was based on an

agreement between himself and the government that he would

never have to answer questions relating to the payment of

rent as long as he continued to answer questions concerning

gambling practices in general.

2. According to the government, appellant was not held in
contempt because the question was withdrawn by London's
counsel.

3. To avoid any problems with the validity of the prior
immunity orders, a new order was entered on April 28, 1993.

-6-

The district court judge made several findings.

First, he determined that appellant had met informally with

Dembin prior to testifying before the grand jury, even though

the immunity order did not require such a meeting, because it

was in his best interests to do so. The judge acknowledged

Dembin's statement that he would not question appellant about

rent. He concluded that "Dembin did not promise [appellant],

however, that those questions would never be asked of

[appellant] before any future Grand Jury."

Second, the judge accepted the explanation that

Dembin was merely being "prudent," seeking to get answers

relevant to his investigation without the time-consuming

delays of litigation. The judge further held that

in January, 1988, [appellant] may well
have had a hope that he would never be
asked about rent. I also find, however,
that he did not then believe, and in any
event could not have reasonably believed
that he had an agreement or assurance
that he would never be asked about that
subject.

As for Pearlstein, the judge determined that he had

acted with the same motives as Dembin because, like Dembin,

he was interested in money laundering, not rent. As such, he

also had sought the most efficient way to secure the

information he needed. Thus, the judge found, Pearlstein had

not, through his conduct, "recognize[d] or create[d] any

agreement that the Government would not ever ask [appellant]

. . . questions [about rent]."

-7-

Based on the foregoing, the judge concluded that

there was no agreement between the government and appellant

that he would never be asked about rent. He pointed out that

appellant had never raised the existence of any such

agreement when he was asked about rent at the 1992 grand

jury, nor did he attempt to consult with his attorney even

though his attorney was present outside the jury room.

Appellant's failure to mention the agreement at the London

trial also belied his claim that an agreement concerning rent

then existed. Finally, the judge determined that appellant

"did not rely to his detriment or give any consideration for

the purported agreement he now seeks to rely on."

As for appellant's claim that his informal

cooperation with the government -- supplying information

outside of the grand jury -- constituted adequate

consideration, the judge declared:

It is often the case that a witness
compelled to testify will meet with his
counsel and the Government before
testifying because it has the potential
to make his Grand Jury testimony or trial
direct and cross-examination testimony
proceed more smoothly. I find that that
is essentially what occurred in this
case.

Because appellant failed to establish a sufficient reason for

his refusal to answer the questions concerning rent, the

judge granted the government's petition for contempt.

III.

-8-

Whether the conduct in this case constituted

contempt turns on a simple issue. If the government in

exchange for cooperation bound itself not to ask appellant

any further questions about rent, then under the case law he

was not obliged to answer. Such commitments, where they are

made, are treated as akin to contracts and construed under

contract law principles. United States v. Pelletier, 898

F.2d 297, 301 (2d Cir. 1990); United States v. Hogan, 862

F.2d 386, 388 (1st Cir. 1988). Indeed, "due process requires

that the government adhere to the terms of any . . . immunity

agreement it makes." Pelletier, 898 F.2d at 302. Where the

terms of an agreement are not clear because, for example,

there is no written contract, the court's "task [is] to

construe the words used to try, if possible, to carry out the

intention of the parties in light of all the facts and

surrounding circumstances . . . ." In re Wellins, 627 F.2d

969, 971 (9th Cir. 1980).

In this case, the district court found as facts

that the government in the initial grand jury sessions chose

not to question appellant about rent but never promised

appellant permanent immunity from such questions. Further,

the district court found that appellant himself did not

believe that he had been given any such promise of permanent

immunity. Findings of fact by the district court, in

contempt proceedings as elsewhere, are reviewed under a

-9-

deferential standard and will not be set aside unless clearly

erroneous. See Fed. R. Civ. P. 52(a).

The district court's findings are amply supported

by the evidence. There was no written agreement; appellant

himself failed to recollect, even by his own account, the

precise wording that he now claims to have amounted to a

binding commitment; and appellant's failure to invoke any

such supposed agreement when questioned at the 1992 grand

jury session thoroughly undercuts his present claim. These

facts support the finding that there was no commitment, hence

no justification for appellant's failure to testify.

Given the inherently factual nature of issues like

this one, there is no reason to address at length the

authorities cited by appellant, which are in any case

distinguishable. In In re Wellins, for example, the

government was found to have obtained cooperation by an

agreement that Wellins' cooperation would not be revealed;

and the court enforced that agreement. 627 F.2d at 971.

Similarly in In Re Doe, 410 F. Supp. 1163 (E.D. Mich. 1976),

a witness turned over drugs following a promise that he would

not be further questioned about them and the court held the

government to its commitment.

If appellant in this case had a comparable

agreement, it too would be enforced, but appellant has not

proved such an agreement. Absent an agreement, the contempt

-10-

is patent and the order under review is affirmed.

Appellant's motion for oral argument is denied.

-11-