**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5501

CHARLES ALEXANDER HUGHES, SR.,
a/k/a Little Charles,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5502

DENNIS DWAYNE JONES,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert J. Staker, Senior District Judge.
(CR-94-15)

Argued: May 10, 1996

Decided: July 12, 1996

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Joseph Curtis, Ashland, Kentucky, for Appellant Hughes; Gregory Marshall Courtright, COLLINS & COURTRIGHT, Charleston, West Virginia, for Appellant Jones. Miller Allison Bushong, III, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles Alexander Hughes, Sr., and Dennis Dwayne Jones (collectively Appellants) were convicted of conspiracy to distribute and to possess with intent to distribute cocaine base, see 21 U.S.C.A §§ 841(a)(1), 846 (West 1981 & Supp. 1996), and one count each of distribution of cocaine base, see 21 U.S.C.A. § 841(a)(1); additionally, Jones was convicted of one count of possession with intent to distribute cocaine base, see id. Although Appellants raise a host of alleged errors at trial and sentencing, all of their contentions are meritless; accordingly, we affirm their convictions and sentences.

I.

Viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the testimony of Government witnesses established the following facts. From at least March 1993 to January 1994, Hughes lived in his mother's house with Jones, Robert Ziegler, Greco Lewis, and Jerry Westmoreland. Over the course of this period, Hughes's residence served as a distribution point for sales of cocaine base. Hughes traveled out-of-town to purchase powder cocaine; upon Hughes's return, members of the house-

2

hold would convert the powder cocaine to cocaine base, cut the cocaine base into rocks, and store the cocaine base in baggies in Hughes's basement for future distribution.

Jones served as Hughes's "right-hand man" and the "main seller," assisting Hughes in distributing the cocaine base to users and to other dealers selling cocaine base for the conspiracy. (J.A. vol. III, tr. at 427.) Cocaine base was available to customers at Hughes's residence twenty-four hours per day, seven days per week.

During the spring of 1993, the Huntington, West Virginia, Federal Drug Task Force began surveillance of Hughes's residence after an investigation revealed that numerous individuals suspected of using, possessing, and distributing significant quantities of cocaine base frequented the house. In connection with the investigation, confidential informants made seven controlled purchases of cocaine base at Hughes's residence: three from Jones, one from Hughes, one from Ziegler, one from Westmoreland, and one from an unidentified individual. The investigation culminated in the execution of a federal search warrant at Hughes's residence. The search resulted in the confiscation of 6.18 grams of cocaine base and $1,654 in cash, and the arrest of Hughes, Jones, Lewis, Westmoreland, and Stanley Russell. Hughes's son, Charles A. Hughes, Jr., was later arrested for his role in the conspiracy.

Subsequently, a federal grand jury in the Southern District of West Virginia indicted Hughes, Jones, Hughes, Jr., Westmoreland, Ziegler, Russell, and Lewis each for conspiracy to distribute and to possess with intent to distribute cocaine base; Hughes, Jones, Westmoreland, and Ziegler each for one count of distribution of cocaine base; and Jones and Lewis each for one count of possession with intent to distribute cocaine base. Pursuant to plea agreements, Jones, Hughes, Jr., Westmoreland, Ziegler, Russell, and Lewis pleaded guilty to the conspiracy charge prior to trial and agreed to cooperate with the Government in exchange for the its promise to move the court to dismiss the other charges. After the Government acquired extensive evidence that Jones had not been forthright and truthful in his debriefings, the Government successfully moved the court to void his plea agreement and set a trial date for Jones.

After a one-week joint trial, the jury returned verdicts convicting Hughes and Jones on all counts. The district court sentenced Hughes to 324 months imprisonment and a five-year term of supervised release on the conspiracy conviction and 240 months imprisonment and a three-year term of supervised release on the distribution conviction, to run concurrently. The district court sentenced Jones to 188 months imprisonment each on the conspiracy, distribution, and possession convictions, and supervised release terms of five years, three years, and four years, respectively, all to run concurrently. Additionally, the district court imposed fines of $5,000 on Hughes and $4,000 on Jones.

Although Appellants challenge their convictions and sentences on numerous grounds, we limit our written discussion to Appellants' three main arguments: (1) whether the Government failed to prove affirmatively that the evidence introduced at trial was derived from legitimate sources independent of Jones's debriefings under Kastigar v. United States, 406 U.S. 441 (1972); (2) whether the Government offered sufficient evidence at trial to sustain Appellants' conspiracy convictions; and (3) whether the district court clearly erred in finding that Hughes was the "organizer or leader of a criminal activity that involved five or more participants" under United States Sentencing Commission, Guidelines Manual, § 3B1.1(a) (Nov. 1994). We address these contentions seriatim.

II.

Jones first claims that the Government failed to meet its burden under Kastigar of proving that its prosecution was based on evidence obtained independently of the statements Jones made pursuant to the plea agreement that was later revoked. See Kastigar, 406 U.S. at 460-461. Because the terms of Jones's plea agreement permitted the Government to revoke the agreement and its attendant protections in the event Jones breached it, we reject Jones's contention.

In Kastigar, the Supreme Court upheld the power of the Government to compel a witness' self-incriminating testimony in exchange for the grant of use and derivative use immunity under 18 U.S.C.A. § 6002 (West 1985 & Supp. 1996). See Kastigar, 406 U.S. at 448. In upholding this power, however, the Court devised certain safeguards

4

to preserve the witness' Fifth Amendment privilege against compelled self-incrimination. See id. at 460-61. To protect the privilege, the Government is forbidden from using "the immunized testimony or any evidence derived from it either directly or indirectly" in any subsequent prosecution of the witness. United States v. Harris, 973 F.2d 333, 336 (4th Cir. 1992). This mandate compels the district court to hold a "Kastigar hearing to allow the government the opportunity to demonstrate that all its evidence came from sources independent of the compelled testimony." Id. In the Kastigar hearing, the Government bears the "heavy burden" of proving "that all of the evidence it proposes to use was derived from legitimate independent sources."[1] Kastigar, 406 U.S. at 461-62.

The protections afforded a defendant under Kastigar may arise in two circumstances. First, Kastigar may be implicated pursuant to § 6002 if the Government compels the defendant to testify after he invokes his privilege against self-incrimination. See United States v. Eliason, 3 F.3d 1149, 1153 (7th Cir. 1993). Second, the defendant may be entitled to the Kastigar safeguards under principles of contract law if the defendant agrees to cooperate with the Government, and in exchange, the Government promises not to use the information provided against the defendant. See id.; United States v. Pelletier, 898 F.2d 297, 301 (2d Cir. 1990). Because the Government never granted Jones statutory use and derivative use immunity under § 6002, we address only whether the protections Jones asserts arose from the plea agreement. See United States v. Brown, 979 F.2d 1380, 1381 (9th Cir. 1992) ("[T]he Government is not bound by the procedures and requirements of the use immunity statute when granting immunity in

_____

[1] Jones misapprehends the meaning of the term "legitimate independent sources": In his reply brief, Jones asserts that the witnesses for the Government are neither legitimate nor independent because they are "self-confessed drug addicts and co-defendants and `associates' testifying under the conditions of their plea agreements." (Appellants' Reply Br. at 1.) Under Kastigar, however, we inquire only whether the Government prosecuted the defendant using evidence derived directly or indirectly from the defendant's immunized testimony, not whether the Government's witnesses are credible; indeed, we are "bound by the credibility choices of the jury." United States v. Lamarr , 75 F.3d 964, 973 (4th Cir. 1996) (internal quotation marks omitted).

5

the form of a contractual agreement . . . ."). In determining whether Jones is entitled to the Kastigar protections, we turn to the terms of the plea agreement itself, see Pelletier, 898 F.2d at 301-02, and we interpret it using principles of contract law, see Brown, 979 F.2d at 1381.

Jones's plea agreement does not require the Kastigar safeguard that Jones asserts because the agreement provides for the revocation of any protection from prosecution upon Jones's breach. Although the plea agreement grants Jones protection from prosecution that appears to be similar in scope to the concept of use and derivative use immunity defined in Kastigar,[2] the terms of the agreement expressly provide that the protection is revoked if "the agreement becomes void due to violation of any of its terms by [Jones]," (J.A. vol. II, p. 176.) Thus, even if we were to assume that the plea agreement required the Government to prove a legitimate, independent source for its evidence in a subsequent prosecution, that requirement was revoked upon Jones's failure to be forthright and truthful.[3] Because Jones does not dispute that he failed to be forthright and truthful in his debriefings, we hold that the Government was released from the strictures of

_____

[2] Paragraph five of the plea agreement provides, in pertinent part:

> Nothing contained in any statement or testimony given by Mr. Jones pursuant to this agreement or any evidence developed therefrom will be used against him directly or indirectly in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines . . . . However, nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from that information and testimony being provided by the defendant pursuant to this agreement, in determining the applicable guideline range, nor does this agreement prevent Mr. Jones from being prosecuted for any violations of federal and state laws he may have committed should evidence of any such violations be obtained from any such independent, legitimate source.

(J.A. vol. II, p. 176-77.)

[3] The plea agreement provides that "Jones will be completely forthright and truthful with this office and federal, state and local law enforcement agents with regard to all inquiries made of him." (J.A. vol. II, p. 176.)

6

Kastigar upon Jones's breach of the plea agreement.[4] See United States v. Skalsky, 857 F.2d 172, 176 (3d Cir. 1988) ("If a witness breaches the agreement by not providing truthful testimony, the witness can be prosecuted not only for perjury and obstruction of justice, but also for any substantive offenses about which he has testified.")

Jones further invokes Federal Rule of Criminal Procedure 11 as a basis for placing a burden on the Government to establish a legitimate, independent source for the evidence used in his prosecution. Although Rule 11 provides that "statement[s] made in the course of plea discussions . . . which result in a plea of guilty later withdrawn" are inadmissible against a defendant, Fed. R. Crim. P. 11(e)(6)(D),[5] it does not further burden the prosecution with a requirement to prove the source of its evidence. Because Jones does not contend that the prosecution offered statements made in the course of plea discussions against him at trial, but argues only that the district court failed to provide to him the protection under Kastigar to which he erroneously believed he was entitled, we also find no violation of Rule 11.

III.

Second, Appellants claim that the Government failed to offer sufficient evidence at trial to sustain their convictions for conspiracy to distribute and to possess with intent to distribute cocaine base. Appellants cite two bases for their claim: (1) The small physical amount of cocaine base recovered in the search of Hughes's residence is insufficient to infer that Appellants conspired to distribute and to possess with intent to distribute cocaine base; and (2) although the Government may have proved individual drug transactions, the Government failed to prove the necessary agreement between Appellants for a con-

_____

[4] Even if the Government were burdened with the safeguards of Kastigar, the district court ruled and the Government argues persuasively that the evidence offered in the prosecution of Jones was derived from legitimate sources independent of Jones's statements made pursuant to the voided plea agreement. Because we conclude that Jones was not entitled to a Kastigar hearing in the first instance, however, we decline to address this issue.

[5] Federal Rule of Evidence 410(4) contains a similar proscription.

7

spiracy. Our review of the evidence, however, leads to the conclusion that the evidence is sufficient to sustain the convictions.

To prove a criminal conspiracy involving illicit drugs, the Government must establish "(1) an agreement between two or more persons to undertake conduct that would violate the laws of the United States relating to controlled substances and (2) the defendant's wilful joinder in that agreement." United States v. Clark , 928 F.2d 639, 641-42 (4th Cir. 1991). The elements of conspiracy may be proved through circumstantial evidence, United States v. Collazo , 732 F.2d 1200, 1205 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985), and "[o]nce it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction," United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 505 U.S. 1228 (1992).

In Glasser, the Supreme Court explained that a jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser, 315 U.S. at 80. A reviewing court, therefore, will sustain a conviction if a rational trier of fact could have found the elements of the crime beyond a reasonable doubt based on the record evidence. See United States v. Powell, 469 U.S. 57, 67 (1984). In applying this standard of review, we must remain cognizant that "[t]he jury, not the reviewing court, weighs the credibility of the evidence . . . , and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) (citations omitted), cert. denied, 115 S. Ct. 954 (1995). With these principles in mind, we turn to Appellants' arguments.

Appellants contend that because the Government recovered only 8.26 grams[6] of cocaine base as physical evidence, an amount Appellants claim is inconsistent with the intent to distribute, the jury could not properly infer that Appellants conspired to distribute and to possess with intent to distribute cocaine base. Even assuming that we

_____

[6] The 8.26 grams of cocaine base consists of the 6.18 grams the Government recovered in its raid of Hughes's residence and 2.08 grams received in controlled purchases by confidential informants.

8

would find 8.26 grams of cocaine base to be a personal-use quantity, which is unlikely, see United States v. Lamarr , 75 F.3d 964, 973 (4th Cir. 1996) (holding that possession of 5.72 grams of cocaine base combined with other circumstantial evidence was sufficient to support the jury's inference of intent to distribute), Appellants' contention is meritless: Appellants would have us ignore the plethora of testimony regarding the large quantities of cocaine base passing through Hughes's residence. One coconspirator testified that he observed between ten and twenty sales of cocaine base per evening from Hughes's residence during the conspiracy period, that he saw cocaine base being cooked on two occasions, and that he purchased two "$500 sack[s]" of cocaine base for resale in the Hughes residence, one sack from Hughes and one sack from Jones. (J.A. vol. II, tr. at 353.) Another coconspirator testified that Jones directed him on more than five occasions to retrieve baggies containing $500 worth of cocaine base from the basement, that he saw cocaine base being cooked and then cut into rocks in Hughes's residence two or three times, and that cocaine base was available for sale in Hughes's residence twenty-four hours per day, seven days per week. This and other testimony at trial establishes that a rational jury could find that large amounts of cocaine base were being distributed from Hughes's residence[7] and, thus, infer that Appellants had the requisite intent to distribute.

Appellants also contend that even if the testimony adduced at trial establishes the existence of individual cocaine base sales, the Government offered no evidence from which a jury could rationally infer the existence of a conspiratorial agreement between Appellants. Again, Appellants' argument simply ignores the testimony of the Government's witnesses. One coconspirator testified that Jones was the second-in-command to Hughes in an extensive conspiracy to distribute drugs from Hughes's residence. In a controlled buy, one witness testified that she saw Hughes provide Jones with the cocaine base she bought from Jones. Another witness related that Hughes gave him a "cookie" of cocaine base, asked him to cut it, and instructed him to

---

[7] Government witnesses testified that customers expected to receive approximately one gram of cocaine base for $100 and that each cooking involved at least one ounce of cocaine base. At sentencing, the district court found by a preponderance of the evidence 328.08 grams of cocaine base attributable to Hughes and 266.08 grams to Jones.

give the resulting pieces of cocaine base to Jones. This testimony, combined with the facts that Jones and Hughes both resided in the same house, sold cocaine base from that house, and stored the cocaine base they sold in the basement of that house, provides substantial evidence from which a rational jury could infer the existence of an agreement between Hughes, Jones, and others to produce, store, and distribute cocaine base. Therefore, we reject Appellants' claim that their conspiracy convictions were not supported by substantial evidence.

IV.

Finally, Hughes claims that the district court clearly erred in concluding that Hughes was the "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." See U.S.S.G. § 3B1.1(a). In determining whether a participant is an organizer or leader of a criminal activity, the court should consider such factors as:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Id., comment. (n.4). We review the district court's determination of Hughes's role in the offense for clear error. See United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995), cert. denied, 116 S. Ct. 1558 (1996).

Contrary to Hughes's assertions, the district court's finding is supported by the evidence offered by the Government at trial. Witnesses for the Government testified that Hughes was the leader of the conspiracy, that Hughes purchased powder cocaine that was converted into cocaine base and later distributed by other dealers, that cocaine base was manufactured, stored, and sold in Hughes's residence, and that Hughes supplied other dealers with cocaine base. Regarding the number of participants, evidence at trial established that Jones,

10

Ziegler, Lewis, Westmoreland, Hughes, Jr., and others participated with Hughes in the criminal activities of the conspiracy. Based on this evidence, we hold that the district court's finding is not clearly erroneous.

## V.

In summary, we conclude that Jones is not entitled to the protection he asserts under Kastigar; therefore, we hold that the Government was not required to demonstrate a legitimate, independent source for the evidence offered against him at trial. Reviewing the sufficiency of the evidence, we conclude that it was sufficient to sustain Appellants' conspiracy convictions beyond a reasonable doubt. Finally, we hold that the district court did not clearly err in finding Hughes to be the leader of a criminal activity that involved five or more participants under U.S.S.G. § 3B1.1. We have carefully examined Appellants' remaining assignments of error and conclude that they are without merit.[8] The judgment of the district court is affirmed.

AFFIRMED

_____

[8] Appellants raised the following additional claims in their brief: (1) the Government improperly enhanced the credibility of certain witnesses by introducing the witnesses' plea agreements into evidence; (2) blacks were systematically excluded from the jury in violation of Appellants' Sixth Amendment rights; (3) the Government improperly struck a black juror from the venire in violation of Batson v. Kentucky, 476 U.S. 79 (1986); (4) the district court erred in denying Appellants' motion for a mistrial after improper contact between a juror and a bailiff; (5) the district court erred in allowing the testimony of various witnesses; (6) the district court erred in determining the amount of cocaine base attributable to Appellants for purposes of sentencing; and (7) either the district court in its discretion should have applied a proposed revision to U.S.S.G. § 2D1.1, which deletes the one-hundred-to-one powder to crack cocaine ratio, or the district court should have declared the present version of § 2D1.1 to be unconstitutional.