**UNITED STATES of America,
Appellee,**

**v.**

**Rolando ALEMAN, Defendant,**

**Francisco Rosario, Defendant–
Appellant.**

**Docket No. 01–1130.**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 10, 2001.

Decided: April 3, 2002.

Richard Ware Levitt, Raymond R. Granger, New York, NY, on the brief, New York, NY, for Defendant–Appellant.

Barbara D. Underwood, Chief Assistant United States Attorney, Alan Vinegrad, United States Attorney, Richard T. Faughnan, Assistant United States Attorney, on the brief, Brooklyn, NY, for Appellee.

Before OAKES, CARDAMONE and POOLER, Circuit Judges.

POOLER, Circuit Judge.

Francisco Rosario appeals from the February 28, 2001, judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) convicting him after a jury trial of conspiring to make false statements and making false statements, in violation of 18 U.S.C. §§ 371 and 1001, respectively. Although defendant assigns a number of trial errors to the district court, including a substantial challenge premised on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), we focus here only on his claim that he was entitled to immunity based on the government's promise. Although the district court had the principal parties before it while we have only a record, we conclude that the district court should not have dismissed so quickly Rosario's claim, which he supported with two affirmations in the face of the government's unsworn denial. Because the record is insufficiently developed regarding Rosario's immunity allegations, we remand to the district court for further proceedings.

## BACKGROUND

The criminal charges against Rosario stem from the government's investigation of the August 9, 1997, assault on Abner Louima in Brooklyn by members of the New York City Police Department. Rosario was a police officer who was present in the 70th precinct station house at the time of the assault. His partner, co-defen-

dant Rolando Aleman, also was present, and the officers were processing an arrest unrelated to Louima. Both Rosario and Aleman saw a police officer escort Louima—who had just been brutally assaulted in the station house bathroom—to a holding cell. However, Rosario and Aleman subsequently agreed to lie to investigators by saying that neither of them was present.

Rosario gave interviews about the assault to federal investigators on September 22, 1997, and November 20, 1997. During the first interview, Rosario denied being nearby when another officer brought Louima to a holding cell. During the second interview, Rosario admitted that he lied on September 22 and that he was present when an officer brought Louima to the cell. Rosario claimed that the officer who escorted Louima was not Justin Volpe, who later pleaded guilty to charges stemming from his commission of the assault. Rosario gave a description of the officer he saw that matched the physical characteristics of Officer Thomas Bruder, but Rosario did not name Bruder. Aleman gave statements to investigators that materially comported with Rosario's account of events. In his later statements, Aleman also admitted that he initially lied, and Aleman said that he knew it was not Volpe who escorted Louima to the holding cell.

According to Rosario, before he granted the second interview, Assistant United States Attorney Catherine Palmer told his attorney that if Rosario agreed to the second interview and told the truth then the government would not prosecute him and even would help him keep his job. Rosario claims that Palmer also told his lawyer

that the Police Department was following her office's lead although the department would make the final decision regarding Rosario's job. According to Rosario's attorney at the time, he understood the government "clearly to be offering immunity to Officer Rosario if he told the truth and agreed to testify on behalf of the government." Rosario claims to have agreed to the second interview based on the government's promise of immunity.

No immunity to Rosario was forthcoming. A federal grand jury indicted Rosario and Aleman on June 21, 1999, and charged them in seven counts with conspiring to make false statements and making false statements. On April 17, 2000, Aleman pleaded guilty to one count of making false statements and later received a sentence of two years probation and $100 special assessment. Rosario went to trial in May 2000.

In a pretrial motion, Rosario asked the district court to dismiss the indictment based on the government's promise of immunity. In the alternative, defendant asked the court "to charge the jury that it may acquit him on all counts should it find that he told the truth when interviewed by the government in November 1997."[1] Rosario also sought a hearing on the issues of whether (1) the government promised not to prosecute Rosario if he told the truth; and (2) the government proved by a preponderance that Rosario did not tell the truth.

Importantly, the government in opposing the motion offered no evidence denying Rosario's account of the immunity agreement. Instead, the government argued that even if Rosario's version of the facts

1. Defendant elaborated on his charge request by asking the district court to instruct the jury that "if it acquits Officer Rosario of ... the substantive count relating to the statements made by Officer Rosario at the November 20 interview, it may give him the benefit of his bargain by acquitting him on all counts based on the government's failure to prove that he lied at the November 1997 interview."

were true, he was entitled to no relief because he was not truthful in refusing to identify Volpe as the officer who escorted Louima to the holding cell. During motion practice, Rosario offered his affirmation and that of his former defense attorney. His current counsel also represented to the court that three other lawyers were prepared to testify that Palmer told them that the government would not prosecute Rosario if he agreed to a second interview and told the truth. The district court denied defendant's motions stemming from the alleged immunity promise, calling them "more a pure piece of pettifogging than a serious contention."

The trial jury convicted Rosario of conspiracy and of making false statements during his first interview on September 22, but it acquitted him of making false statements during his second interview on November 20. On February 9, 2001, the district court sentenced Rosario to three years probation with the special condition of three months home detention and $200 special assessment.

In the appeal of his conviction, Rosario raises three points. First, Rosario argues that the district court erred not only when it granted the government's challenge to his discriminatory use of peremptory strikes during jury selection but also when it refused to give defendant additional peremptory strikes to make up for the ones that he lost. Second, defendant contends that the district court erred in denying his motions based on the alleged immunity agreement. Third, Rosario argues that the district court prevented him from presenting his theory of the case during defense counsel's summation argument to the jury. As discussed more fully below, we find that significant questions remain unresolved regarding the government's alleged promise of immunity. Because determination of this issue may significantly impact whether a trial in this case was proper, we do not at this time address Rosario's assignment of error to other aspects of the trial.

## DISCUSSION

Defendant asked the district court to dismiss the indictment or, in the alternative, provide a jury instruction based on the government's alleged immunity promise. While he maintains that the district court erred in denying this relief, defendant on appeal contends that he at least was entitled to a hearing on the issues of (1) whether an immunity agreement existed; and (2) whether he performed his obligation under the agreement by telling the truth during his second interview. During oral argument, the government acknowledged that it specifically declined to offer any proof denying the existence of an immunity agreement in order to avoid a hearing concerning contested facts. Instead, the government argues that even if it made the offer, Rosario didn't earn immunity because he lied during the second interview when he denied that Volpe brought Louima back to the holding cell. Further, the government contends that only it is in a position to evaluate the truthfulness of Rosario's statements because it could not use Rosario as a witness if the government believed that he was lying.

It is well settled that the government may in its discretion make agreements in which it exchanges various levels of immunity from prosecution for the defendant's cooperation. *United States v. Pelletier*, 898 F.2d 297, 301 (2d Cir.1990). We interpret the agreements according to principles of contract law and review *de novo* whether the district court applied correct principles. *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990). The terms of the agreement govern both the

conditions constituting breach or performance and the remedies available in the event of a breach. *Pelletier*, 898 F.2d at 301–02; *see also United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir.1990). Due process concerns color our interpretation of a contract involving defendant's constitutional rights. Due process not only "requires that the government adhere to the terms of any plea bargain or immunity agreement it makes," *Pelletier*, 898 F.2d at 302, but also requires us to construe agreements strictly against the government in recognition of its superior bargaining power and to "presume that both parties to the ... agreements contemplated that all promises made were legal." *United States v. Ready*, 82 F.3d 551, 559 (2d Cir.1996) (discussing interpretation of plea agreement). Sometimes general fairness principles will require us to invalidate particular agreement terms. *Id.*

■ Interpretation of the alleged immunity agreement in this case is more difficult because it is oral. However, courts have considered unwritten immunity agreements in the past. *See United States v. Nersesian*, 824 F.2d 1294, 1320 (2d Cir. 1987); *United States v. Heatley*, 39 F.Supp.2d 287, 299 (S.D.N.Y.1998). Whether the agreement is written or oral, the "court must determine what the parties reasonably understood to be its terms, including intended remedies in the event of a breach." *United States v. Aluzzo*, 943 F.Supp. 243, 245 (E.D.N.Y.1996). In doing so, the court must be attentive to the fact that the state shoulders the "burden of any lack of clarity in [the] agreement, and [that] ambiguities are to be resolved in favor of defendant." *Pelletier*, 898 F.2d at 302 (citing *Innes v. Dalsheim*, 864 F.2d 974, 979 (2d Cir.1988)). An oral agreement greatly increases the potential for disputes such as this appeal presents, a failure to agree on the existence, let alone

the terms, of the deal. We must consider the possibility that immunity discussions in this case never progressed to a meeting of the minds and formation of an enforceable bargain. We therefore do not encourage the practice of oral immunity agreements. The agreement that Rosario alleged—and that the government chose not to controvert below—promised defendant immunity from prosecution if he fulfilled two terms: first, that he be truthful, and second, that he agree to testify on behalf of the government.

In its ruling, the district court found that Rosario failed to meet the alleged first requirement because "Rosario does not swear that he told the prosecutor on November 20 [during the second interview] that he named Volpe as the person who put Louima in the cell." The district court found this omission fatal to Rosario's claim of truthfulness because the government charged that Rosario falsely stated during the second interview that a police officer other than Volpe placed Louima in the cell. However, we do not find this omission dispositive on the truthfulness issue. Rosario would have been entitled to the benefit of his bargain if he spoke truthfully according to his recollection, even if his account did not support the government's view of the facts. *See United States v. Knights*, 968 F.2d 1483, 1488 (2d Cir.1992); *see also Khan*, 920 F.2d at 1105. In other words, if Rosario sincerely believed during the second interview that an officer other than Volpe was Louima's escort, then he fulfilled the truthfulness requirement of the immunity offer, even if his recollection or sincere belief was actually erroneous.

■ The district court declined to hold a hearing to determine whether Rosario told the truth during the second interview because that was precisely the question that a jury would decide regard-

ing Count 7 of the indictment, to which Rosario had pleaded not guilty. The district court understandably held that "[i]t is ludicrous to ask the court to usurp the functions of the jury." We agree that a pretrial hearing on the ultimate factual issue would have been improper. *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (holding that "[a] defendant is not entitled to raise in a pretrial motion the question whether the government breached an agreement with him if the agreement provides a defense to liability for the crimes charged in the indictment; resolution of that question requires trial of the general issue and is not properly decided in a pretrial motion"). However, the district court's concern over this matter was premature because it first should have ascertained to its satisfaction that an agreement even existed and what its terms were before assessing Rosario's compliance with those terms.

The district court failed to make a record that allows us to determine the existence, scope and effect of an immunity agreement. We recognize that a district court need not conduct a hearing every time a defendant summarily accuses the government of failing to live up to an alleged bargain, but here Rosario submitted an affirmation from his attorney and appeared to offer other corroborating evidence in the form of other attorneys' affidavits. The government made a strategic decision to submit no factual evidence. The district court dismissed too quickly under the heading of "pettifogging" defendant's and his attorney's affirmed allegations that an agreement existed.

On this record, we also cannot determine whether Rosario fulfilled the alleged second requirement of the immunity agreement, which concerned his willingness to testify. Indeed, the first and second requirements are related because they

concern evaluation of Rosario's November 20 statements. The government contends that because it cannot put on the stand a witness who will give untruthful testimony, it is the arbiter not only of Rosario's truthfulness but also his availability as a useful witness. According to the government, it almost always structures its immunity agreements in this way, but we are mindful that the government could have made a poor bargain in this particular case. Defendant states that he did tell the truth and stood ready to testify. Defendant suggests that someone other than the government, such as the court, may determine truthfulness. Resolution of this dispute is impossible without a factual determination regarding the alleged agreement's terms, which will tell us who judges truthfulness and willingness to testify.

We note that in our review of the relevant case law, immunity or cooperation agreements normally vest discretion in the government to determine whether a defendant's cooperation is satisfactory and thus fulfills his obligations under the agreement. *United States v. Resto*, 74 F.3d 22, 25 (2d Cir.1996); *Khan*, 920 F.2d at 1105; *Knights*, 968 F.2d at 1485, *Rexach*, 896 F.2d at 714. We nonetheless constrain the government's discretion, holding that "the prosecution's determination that it is dissatisfied with the defendant's performance under the cooperation agreement ... may not be reached dishonestly or in bad faith." *Khan*, 920 F.2d at 1105. As already noted, "the government's discretion does not grant it power to turn its back on its promises to the defendant under the cooperation agreement or to ignore a defendant's cooperation efforts simply because the defendant is supplying information that the government does not want to hear." *Id.* (citations omitted).

We remand to the district court to conduct a hearing regarding the government's

alleged promise of immunity. We leave it to the discretion of the district court to determine the scope of the hearing and whether to allow the government the opportunity to present evidence regarding the existence of the agreement and its terms. *Cf. Knights*, 968 F.2d at 1487 (holding that once defendant makes a sufficient showing to trigger a hearing, it is within the district court's discretion to determine the format). A critical factual element of the alleged agreement will be who determines Rosario's truthfulness and willingness to testify—the government, the court, or some other party. It may be that Rosario and the government never reached an understanding on this issue. If it is a material term of the bargain in the district court's assessment, then it is possible that the parties never reached a final agreement. It also is possible that contract, due process or general fairness principles will not permit the court to enforce a particular term.

If the district court finds that an agreement existed, it then can determine whether Rosario complied with its terms and the government improperly withheld immunity. The district court must take care, however, to avoid deciding the general issue of Rosario's criminal liability, which may prove impossible in this case because the potential issue of Rosario's truthfulness directly implicates his guilt. *See Doe*, 63 F.3d at 125. In *Doe*, the district court correctly denied defendant's motion to dismiss an indictment where defendant alleged a breach of an immunity agreement that also was an affirmative defense to the criminal charges he faced. *Id.* The issue of the breach directly implicated defendant's guilt and was an improper matter for pretrial consideration. *Id.* Here, the issue of whether Rosario told the truth in November and was entitled to the benefit of his alleged immunity deal also directly implicated his guilt on at least one of the

charges of the indictment. From the district court's holding on remand necessarily will flow other decisions possibly impacting the legitimacy of defendant's conviction. In the event that the district court holds that no immunity agreement existed or that Rosario did not comply with its terms, defendant's conviction will remain intact and this panel will address the jury selection and summation issues that he previously raised.

## CONCLUSION

For the forgoing reasons, we remand for proceedings consistent with this opinion. This panel retains jurisdiction over this appeal if it becomes necessary to address Rosario's arguments regarding jury selection and summation. *See United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994). Accordingly, the Clerk is directed to issue the mandate noting our retention of jurisdiction, in compliance with a *Jacobson* order filed contemporaneously with this opinion.